■ MICHAEL PANNONE, Individually and as Administrator of the Estate of CELESTE PANNONE, Deceased, Appellant, v CHARLES BURKE et al., Defendants, and WILLIAM L. CROW CONSTRUCTION COMPANY, Defendant and Third-Party Plaintiff-Respondent. THOMAS CRIMMINS CONTRACTING COMPANY, Third-Party Defendant-Respondent.—In an action to recover damages for personal injuries, etc., the plaintiff appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Williams, J.), dated June 1, 1988, which granted the motions of the defendant and third-party plaintiff William L. Crow Construction Company, and the third-party defendant Thomas Crimmins Contracting Company to reargue their prior motions for summary judgment which were denied in an order dated May 6, 1988, and, upon reargument, vacated the prior determination and granted the motion of William L.

Crow Construction Company for summary judgment dismissing the complaint insofar as it is asserted against it, and any cross claims against it, and the motion of the third-party defendant Thomas Crimmins Contracting Company for summary judgment dismissing the third-party complaint and any cross claims and counterclaims pertaining thereto against it.

Ordered that the appeal from so much of the order and judgment as granted the motion of the third-party defendant Thomas Crimmins Contracting Company for summary judgment is dismissed, since the plaintiff is not aggrieved by that portion of the order (see, CPLR 5511); and it is further,

Ordered that the order and judgment is affirmed insofar as reviewed; and it is further,

Ordered that the third-party plaintiff-respondent and third-party defendant-respondent are awarded one bill of costs, payable by the plaintiff.

On the morning of March 26, 1981, while waiting in their car at a traffic light at the intersection of Fourth Avenue and Eighth Street in Brooklyn, the plaintiff Michael Pannone was injured, and his wife Celeste was killed, when a Mack dump truck rammed into the rear of their car. Just moments before the collision, an unknown thief had stolen the truck, which had allegedly been left unattended only a few blocks from the scene of the accident by its driver, the defendant Willie J. Hickson, with its motor running and the key in the ignition. The truck had allegedly been left at the end of a line of 30 to 40 dump trucks on Seventh Avenue that had been waiting to haul debris away from a construction site at Methodist Hospital.

William L. Crow Construction Company (hereinafter Crow) had contracted with the defendant Methodist Hospital to act as general contractor or "Construction Manager" at the construction site, and Thomas Crimmins Contracting Company (hereinafter Crimmins) was the excavation contractor. Crimmins orally subcontracted with the defendant MacFamily Construction Corp. (hereinafter MacFamily) to haul debris from the jobsite. MacFamily, in turn, subcontracted with the defendant Dependable Enterprises, Inc. (hereinafter Dependable). Dependable, in turn, contracted with the defendant Charles Burke to have his two trucks available for work at the site, and Burke hired Hickson to drive one of his trucks while Burke drove the other. Burke and Hickson did not discover that the truck was missing until shortly after the fatal collision had occurred.

The plaintiff commenced the instant action against, *inter alia,* Burke, Hickson, Crow, MacFamily, and Dependable. After issue was joined, Crow moved for summary judgment dismissing the complaint and the cross claims against it. Shortly thereafter, Crimmins cross-moved for summary judgment dismissing a third-party action brought by Crow against it, as well as the cross claims and counterclaims pertaining thereto. Both motions were initially denied, but, upon reargument, both were granted.

Vehicle and Traffic Law § 1210 (a) imposes a duty upon a person driving or in charge of a motor vehicle to lock the ignition and remove the key when leaving it unattended. While the plaintiff concedes that this statute did not directly impose a duty on Crow or Crimmins, under the circumstances of this case, it clearly imposed a duty on both Burke and Hickson. The question in this case, therefore, is whether Crow and Crimmins had a duty to control Burke and Hickson and to prevent them from violating the statute.

As noted in *Pulka v Edelman* (40 NY2d 781, 783), the duty to control others arises only in the following relationships: "(1) '[t]he relationship between the defendant and the person who threatens the harm to the third person may be such as to require the defendant to attempt to control the other's conduct' or (2) 'there may be a relationship between the defendant and the person exposed to harm which requires the defendant to afford protection from certain dangers including the conduct of others' (Harper & Kime, Duty to Control the Conduct of Another, 43 Yale LJ 886, 887-888)."

With respect to the first relationship, as a general rule, one who engages an independent contractor is not liable for the latter's negligence in performance *(see, Kojic v City of New York,* 76 AD2d 828). While there are a number of settled exceptions to this rule, none is applicable here. There is insufficient evidence in the record to raise a triable issue as to whether Crow or Crimmins had actual or constructive notice of the dangerous practice allegedly engaged in by Burke and Hickson, i.e., leaving their trucks unattended with the motors running and the keys in the ignition *(cf., Schwartz v Merola Bros. Constr. Corp.,* 290 NY 145; *Kojic v City of New York, supra).* Moreover, the plaintiff has failed to set forth any evidentiary facts to substantiate that there was a danger to others inherent in the work subcontracted to Burke *(see, Vaniglia v Northgate Homes,* 106 AD2d 384; *Shapiro v Robinson,* 102 AD2d 822, *affd* 63 NY2d 896).

Furthermore, there was no relationship between the Pannones, who were members of the general public seated in a car several blocks from the construction site, and Crow and Crimmins. Certainly there was no contractual basis for the assertion of a relationship between them. Moreover no relationship existed under the cited sections of the Administrative Code of the City of New York. While we note that under Administrative Code of the City of New York § 27-1009 (a) both Crow and Crimmins were obligated, as contractors engaged in building work, to "institute and maintain safety measures * * * to safeguard all persons and property affected by [their] operations", that section was not intended to protect members of the general public seated in a car several blocks from a construction site from the type of activity allegedly engaged in here. Thompson, J. P., Bracken, Kunzeman and Spatt, JJ., concur.