JANE THOMASSEN, Appellant, v J & K DINER, INC., Doing Business as CONCORD RESTAURANT-DINER, et al., Respondents. (And a Third-Party Action.)

Second Department, December 18, 1989

APPEARANCES OF COUNSEL

*Martin Hurwitz (Edwin L. Whitman* of counsel), for appellant.

*J. Russell Clune, P. C. (Vincent J. Aceste* of counsel), for respondents.

## OPINION OF THE COURT

KUNZEMAN, J. P.

Where a member of the general public, having been invited into a place of public assembly, is injured while using a staircase improperly constructed by an independent general contractor, may vicarious liability be imposed upon the owner of the business and upon the owner of the land upon which the business is located based on the nondelegable duty of the owners to provide the public with a reasonably safe premises and a safe means of ingress and egress? We answer that question in the affirmative and hold that the judgment in favor of the defendant owners must be reversed and a new trial ordered on the issue of liability.

The defendant Demetre Corinis owned land in Syracuse, New York, upon which the Concord Restaurant-Diner was to be erected. He was also president of the defendant corporation J & K Diner, Inc., which owned the diner. In 1978, Corinis, in his individual capacity, and on behalf of the corporation, retained the third-party defendant Marathon Construction Inc. (hereinafter Marathon) to construct the diner. The services of the third-party defendant Frank Conte were utilized as designer and the third-party defendant Patel & Schroff Associates (hereinafter P & S), a firm of structural engineers, was employed with respect to certain structural portions of the building. The construction was eventually completed and the diner opened for business.

The facts adduced at the trial show that on November 1, 1980, the plaintiff, while on a business trip in Syracuse, New York, was injured when she fell down a flight of stairs in front of the Concord Restaurant-Diner. She and a business associate had entered the diner by climbing the stairs leading to the door on the east side of the vestibule. After having lunch, they left the diner using the door on the west side.

The door through which the plaintiff exited opened onto a staircase which had no handrail on either side. To the plaintiff's right, between the staircase and the outside wall of the

diner, there was a ramp with a handrail which was higher than the staircase. As the plaintiff descended, she was on the right side of the staircase next to the ramp. When she descended to the third step, she fell forward, landed on her hands and knees, and sustained injuries.

It was adduced at trial that the staircase for the diner was 65 inches wide. Testimony by one of plaintiff's expert witnesses established that, inasmuch as the staircase was wider than 44 inches, the New York State Building Code required handrails on *both* sides (9 NYCRR 735.3 [a] [10]). Although there was a handrail for the ramp adjacent to the staircase, that handrail did not conform with the relevant building code provisions for staircases. Further, the ramp's balusters and posts did not qualify as a handrail for a person using the staircase.

The plaintiff's expert also testified that the placement of the door had the effect of directing a person who was exiting the diner towards the right side of the staircase, which was below the nonconforming ramp handrail. It was the witness's expert opinion that the door should have been offset in the center of the staircase and a separate door should have been installed for the ramp.

Another expert witness testified that the pitch variation and resultant variations in the step height in the top three steps of this staircase were considerably in excess of the specifications in the New York State Building Code (9 NYCRR 735.3 [a] [8]). It was this expert's opinion that those variations caused the plaintiff to lose her balance and that her loss of balance could have been corrected by a properly placed handrail.

The plaintiff essentially claims that the defendants Corinis and J & K Diner, Inc., as owners of the premises, should be held liable for the negligence of their general contractor based upon the nondelegable duty of a property owner who has invited members of the general public into his business premises to provide a safe means of ingress and egress to the public. Although defendants Corinis and J & K Diner, Inc., concede that they have such a nondelegable duty, they contend that they may not be held responsible for the negligence of their agent, the general contractor Marathon.

We are of the opinion that the doctrine of respondeat superior renders the owners of places of public assembly subject to vicarious liability for the negligence of their inde-

pendent general contractors even if the construction has been completed and possession of the premises has been turned over to the property owners. Therefore, the trial court erred in its instructions concerning that doctrine and a new trial is required on the issue of liability.

As a general rule, a property owner who has engaged an independent contractor to perform construction on his premises is not liable for the latter's negligence while the work is in progress *(see, Kojic v City of New York,* 76 AD2d 828; *Janice v State of New York,* 201 Misc 915). However, a number of settled exceptions to this general rule has rendered it subject to substantial erosion. Liablity has been found to lie where a property owner or other hirer of the general contractor had actual or constructive notice of the dangerous condition *(see, Schwartz v Merola Bros. Constr. Corp.,* 290 NY 145; *Kojic v City of New York, supra),* or where there was a danger inherent in the work and the owner should have reasonably anticipated that the work would be dangerous to others *(see, Kojic v City of New York, supra; Horn v State of New York,* 31 AD2d 364; PJI 2:256; Restatement [Second] of Torts § 427).

Liability has also been imposed upon an owner or hirer in those instances where it controls the manner of performance of the work or personally interferes with it *(see, Broderick v Cauldwell-Wingate Co.,* 301 NY 182), where the work contracted to be done is unlawful, where the acts performed create a public nuisance, or where the owner or hirer is bound by a statute to do a thing efficiently and injury results from its inefficiency *(see, Berg v Parsons,* 156 NY 109).

In addition to the above-stated exceptions, certain duties have been imposed upon an owner or hirer which cannot be delegated to another so as to relieve it from liability. Where such a duty exists, the owner of property or other employer may not be relieved of liability for injury even though the injury is occasioned by the neglect of an independent contractor.

One such duty arises whenever the general public is invited into stores, office buildings and other places of public assembly. The owner of such premises is charged with the duty to provide members of the general public with a reasonably safe premises, including a safe means of ingress and egress *(see, Gallagher v St. Raymond's R. C. Church,* 21 NY2d 554, 557). That duty may not be delegated by the property owner to his agents or employees. It has been indicated that, under certain

circumstances, an owner may be held liable based upon that nondelegable duty for a defect in construction caused by an independent contractor *(see, Coffey v Dormitory Auth.,* 26 AD2d 1). While the owner or employer may bargain with the contractor for performance and stipulate for indemnification if the duty is not performed, the owner cannot thereby relieve itself of liability for the failure of the contractor to perform as required *(see, Boylhart v DiMarco & Reimann,* 270 NY 217; *see also, Petluck v McGolrick Realty Co.,* 240 App Div 61).

While the issue raised in the situation presently before us has not been specifically addressed by the courts of this State, certain cases have indicated, at least by inference, that a defect created during construction in places of public assembly may continue to be the owner's responsibility, even after the completion of the work, based upon the nondelegability of its duty to keep, maintain and, in the first instance, create a safe premises *(see, Gallagher v St. Raymond's R. C. Church, supra; Coffey v Dormitory Auth., supra).*

For example, in *Boylhart v DiMarco & Reimann (supra),* a general contractor constructing a subway under a street in the City of New York was held liable for injury to a child caused by a fall of steel beams insecurely piled in the street by the subcontractor performing the steel construction work. The court held that one who undertakes work in a public highway, which work, unless carefully done, will create conditions which are dangerous to members of the public using the highway in the usual and ordinary manner, is under a duty to use requisite care. That duty cannot be delegated. In a similar vein, in a case involving a situation where the plaintiff, while visiting a realty development at the invitation of the owner, was injured as a result of an explosion of dynamite, the court stated *(Petluck v McGolrick Realty Co., supra,* at 64): "It is no answer to the complaint against the owner that independent contractors were at work upon the premises and that plaintiff did not prove by whom the blast was set off; *first,* because it appears that the owner itself exercised general supervision over the development work, and, *second,* because the duty of protecting its 'business visitor' from danger while upon the premises is one which the owner could not delegate to an independent contractor." These cases are not, however, directly analogous to the matter before us, since *Boylhart* dealt with a work in progress and *Petluck* involved an inherently dangerous condition.

In order to determine the issue presented in this case,

where construction of the business premises has been completed and possession of the property has been turned over to the owners, we turn to the rule of the American Law Institute set forth in the Restatement (Second) of Torts § 422, which states that:

"A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

"(a) while the possessor has retained possession of the land during the progress of the work, or

"(b) after he has resumed possession of the land upon its completion".

Illustration No. 3 under that section sets forth a fact pattern fairly close to the case before us, i.e., construction had been completed by the contractor and the owner was in possession of the premises. In that example, an awning, which had been negligently installed by the contractor above a window, subsequently fell into the public street and injured a pedestrian. It was concluded that the owner should be subject to liability for the injuries sustained by the pedestrian.

While there does not appear to be a New York case specifically citing Restatement (Second) of Torts, § 422, Restatement (First) of Torts § 422 has been cited with apparent approval by the Appellate Division, First Department *(see, Hanley v Central Sav. Bank,* 255 App Div 542). However, the predecessor of the present section 422 is merely a more specific codification of the rule that the owner is vicariously liable for the acts of a general contractor during construction while the owner remains in possession of the land during the progress of the work.

The current section 422 has been cited with approval in other jurisdictions *(see, Koepke v Carter Hawley Hale Stores,* 140 Ariz 420, 682 P2d 425; *Lipman Wolfe & Co. v Teeples & Thatcher,* 268 Ore 578, 522 P2d 467). Those jurisdictions have viewed the imposition of vicarious liability as an extension of the employer's nondelegable duty to the business invitee.

For example, in adopting the rule in Arizona, the court, in *Koepke v Carter Hawley Hale Stores (supra),* gave careful consideration to its underlying policies, that is, the possessor of the land is the one primarily benefited by the contractor's

work, is able to obtain insurance to cover injuries to patrons and can incorporate such expenses into the cost of doing business, and is in a position to minimize the risks, i.e., it can ensure that a competent contractor is employed and that dangerous conditions are remedied.

The policies underlying Restatement (Second) of Torts § 422 are valid and reasonable. Those policies are a sufficient basis for imposing liability upon an owner of a business or the land upon which the business is located for injuries sustained to a customer or other member of the general public due to a defect in construction caused by an independent contractor even after construction has been completed and the premises have been turned over to the owner.

Therefore, under the circumstances herein, the trial court should have instructed the jury with respect to vicarious liability. Essentially, the jury should have been instructed that, if they found that the independent contractor Marathon was negligent in the construction of the staircase, then the defendants Corinis and J & K Diner, Inc., were vicariously liable (see, Restatement [Second] of Torts § 422). By virtue of the court's charge herein, the jury was never given the opportunity, in the first instance, to determine whether the defendant Marathon was negligent.

Further, the court's charge contained language which required the jury to find in favor of the defendants Corinis and J & K Diner, Inc., if it were determined that they lacked notice of the condition which caused the injuries. Those instructions were extremely prejudicial to the plaintiff's case. Where, as here, there is a claim that the initial construction was defective, notice is not a factor, since the dangerous condition was originally created by the defendants or their agent (see, Lederer v Samuel Broadway Food Corp., 33 AD2d 553).

Those errors were compounded by the court's further instructions with respect to evidence that no prior accidents had occurred on the subject stairway. While the jury properly could have considered that evidence on the issue of the condition of the stairway (see, Orlick v Granit Hotel & Country Club, 30 NY2d 246 [where the period was four years]), the trial court's instructions connected that evidence to the improperly introduced issue of notice.

Accordingly, the judgment is reversed insofar as appealed from, on the law, and a new trial is granted to the plaintiff as

to her causes of action against the defendants and third-party plaintiffs, with costs to abide the event. The findings of fact are affirmed.

BALLETTA, J. (dissenting). I respectfully disagree with the majority's extension in this case of the doctrine of vicarious liability so as to hold a property owner and the owner of a business on the property liable for the negligence of an independent contractor.

There is no question that a landowner must act as a reasonable person in maintaining property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk (see, Basso v Miller, 40 NY2d 233, 241). However, a landowner is not an insurer "liable for every injury no matter the nature of the hazard or how long it has been in place. There must be some proof that the potential danger reasonably could have been neutralized and that its existence was or should have been discovered" by the landowner (see, Preston v State of New York, 59 NY2d 997, 999). In order to recover, a plaintiff must present evidence tending to show either that the defendant knew of a dangerous condition and did not remedy it, or that the condition existed for a sufficient length of time that, in the exercise of reasonable care, the defendant should have known of it (see, Gordon v American Museum of Natural History, 67 NY2d 836).

In this case, there is no evidence that the defendant landowner Corinis or the owner of the business, J & K Diner, Inc., had any notice, actual or constructive, of the allegedly defective condition. The jury's verdict of no liability on the part of Corinis was fully supported by the record in this regard. At no time during the construction of the diner, or up until the accident, did Corinis learn what the New York State Building Code requirements were with regard to stairways or handrails, and he never received any notice of violation concerning the stairway. Moreover, no one involved in the construction of the diner had ever told him anything about the code requirements. He had never had any difficulty in walking up or down the stairs and no one had ever complained to him about the stairway. Furthermore, as far as he knew, there had been no other accidents on the stairway from the time that the building was built until the time of the accident.

The majority, in order to avoid the problem of the lack of

notice to Corinis and J & K Diner, Inc., of the alleged defect, would now impose vicarious liability upon them for the negligence of the independent contractor Marathon who constructed the building. I do not believe that such a result is supported by the applicable law or by public policy considerations.

The cases relied upon by the majority for its unwarranted imposition of liability on the landowner in this case are all clearly distinguishable. In *Coffey v Dormitory Auth.* (26 AD2d 1), the issue was not whether the landowner was liable for the installation of the glass pane into which the plaintiff ran. Rather, the issue in *Coffey* was whether the landowner's third-party complaint against the designer, builder, and installer of the glass stated a cause of action for indemnification sufficient to withstand a motion to dismiss pursuant to CPLR 3211 (a) (7). Nowhere in the *Coffey* decision did the court use language enunciating the principle that the majority attributes to it.

The cases of *Boylhart v DiMarco & Reimann* (270 NY 217), *Petluck v McGolrick Realty Co.* (240 App Div 61), and *Hanley v Central Sav. Bank* (255 App Div 542, *affd* 280 NY 734), all involved situations where the injury occurred while work was still in progress. None of the three cases involved a situation where, as here, the work had been completed some 18 months prior to the accident. Moreover, each of the three cases involved an inherently dangerous activity which is not present in the case herein. In *Boylhart (supra,* at 221), "[t]hirty pieces of steel, ranging from twelve and one-half to sixteen feet long and weighing from 450 to 900 pounds each, piled four feet high in the street, created a condition inherently dangerous to the public unless the work of piling was carefully done". In *Petluck,* the plaintiff was injured by rock projectiles from blasting operations. The owner was aware that blasting was being conducted on the premises, yet invited the plaintiff onto the premises anyway. There was also some evidence that the owner's employees may have been involved in the blasting. In *Hanley (supra,* at 543), the "[d]emolition of a building in a crowded section of a city [was] considered as [being] inherently dangerous". Furthermore, there was evidence that the landowner had retained supervision over the details of the demolition work.

The majority's reliance upon Restatement (Second) of Torts § 422 is also misplaced. Not only has this provision never been cited with approval by any court in this State, but the principle which it sets forth and which the majority wishes to adopt

runs contrary to accepted New York case law. The two out-of-State cases cited by the majority in support of section 422 are also distinguishable. Both *Koepke v Carter Hawley Hale Stores* (140 Ariz 420, 682 P2d 425) and *Lipman Wolfe & Co. v Teeples & Thatcher* (268 Ore 578, 522 P2d 467), involved injuries to shoppers that occurred while the independent contractors were doing remodeling work in stores which the owners had left open for customers. Moreover, the *Koepke* case concerned only section 422 (a), which relates to the liability of the possessor of land where he has retained possession of the land while the work is being performed. In addition, in *Koepke (supra,* 140 Ariz, at 423, 682 P2d, at 428), the court noted that it was "well established that we will follow the *Restatement* in the absence of Arizona law to the contrary". I am unaware of any similar judicial policy in this State to blindly adhere to the Restatement.

Furthermore, other jurisdictions have not adopted the Restatement view. For instance, in *Kresge Co. v Port of Longview* (18 Wash App 805, 573 P2d 1336), the Washington Court of Appeals rejected the applicability of section 422 to a situation where a warehouse roof collapsed. The owner of the warehouse was not vicariously liable for the alleged negligence of the contractor or the architect in constructing the building in the absence of any evidence that the owner controlled the details of their work. The court went on to say that the owner could only be held liable for his own negligence, if any, in failing to use reasonable care so as to discover and discharge the accumulation of water on the roof which led to its collapse. In another case, *Mai Kai, Inc. v Colucci* (205 So 2d 291 [Fla]), the Supreme Court of Florida held that a restaurant owner could not be held vicariously liable for the negligence of the independent contractor who installed a ceiling fan, when a part of the fan fell and injured a customer. The landowner's duty was "one of due care or reasonable care in preventing or correcting an unsafe condition, as opposed to absolute liability for a contractor's negligence" *(Mai Kai, Inc. v Colucci, supra,* at 293). In the absence of proof that the alleged defect could have been discovered with reasonable care, the landowner was not liable to the customer.

I can perceive of no reason in this case for a departure from the well-established principle that one who engages an independent contractor is not liable for the latter's negligence in performance *(see, Kojic v City of New York,* 76 AD2d 828). While there are a number of exceptions to the rule, none of

them are applicable here, and, as noted earlier, there was no showing that Corinis or J & K Diner, Inc., had actual or constructive notice of the alleged defect *(see, Pannone v Burke,* 149 AD2d 673; *see also, Schwartz v Merola Bros. Constr. Corp.,* 290 NY 145, 152).

The case of *McNulty v Ludwig & Co.* (125 App Div 291) involved an injury that occurred after the work had been completed. In *McNulty,* the plaintiff was injured as he was walking on the sidewalk in front of the defendant's building and a sign fell on him. The sign had been installed about two weeks before the accident by an independent contractor. The court held that the landowner was not liable for the injury, stating that: "[t]he contractor was not the agent or servant of the defendant, and the latter was not liable for the former's acts under the maxim *respondeat superior.* The work of putting up the sign was not inherently dangerous, and it is difficult to perceive how the defendant can be held negligent for the act of another, not his servant, to whom he had the right to intrust the performance of the work" *(McNulty v Ludwig & Co., supra,* at 292; *see also, Silva v American Irving Sav. Bank,* 31 AD2d 620, *affd* 26 NY2d 727; *Hildebrand v Kazmierczak,* 25 AD2d 603).

The majority, in deciding that vicarious liability may be imposed upon the property owner and the owner of the business on the property, has necessarily limited the application of the decision to a place of public assembly (which in this case is a place of business frequented by the public) based upon the nondelegable duty of the owners to provide the public with a reasonably safe premises and a safe means of ingress and egress. The majority was not called upon to make a more sweeping decision which would apply to property owners in general because of the particular usage of the premises involved here. Nevertheless, Restatement (Second) of Torts § 422, which is cited with favor by the majority, does not limit its application to owners of property dedicated to public assembly or business purposes where the public is invited. Section 422 applies to "[a] possessor of land" without limitation.

While the private homeowner is not directly affected by this decision, once having broken ground to provide for vicarious liability where properties involve public assembly (i.e., establishments open to the general public), how large a step is it to move to properties owned by individuals for residential purposes? There is, therefore, an important public policy consider-

ation which dictates that the majority's extension of liability in this case be rejected. While this decision decides the fate of an owner of a diner in Syracuse, New York, the court is pronouncing a rule of liability which is easily and logically extended to each and every property owner in the State. There are thousands of homeowners throughout the State who, at one time or another, have remodeled or renovated their homes by hiring an independent contractor to do the work. The majority is opening the door so that the average homeowner may eventually find that he or she is going to be vicariously liable for any negligent construction by that contractor, regardless of whether the defect was in plain view or hidden, regardless of whether he or she had any notice of the defect, and regardless of how far in the past the work was done. The average homeowner will now have to be as knowledgeable as a carpenter, an electrician, a plumber, or a roofer, so that he or she can be in a position to decide whether work is being done improperly or deviates in some aspect from the New York State Building Code. This is not what the law has been, and this is not what the law should be.

The real problem in this case is that the independent contractor Marathon is now defunct, and that the majority, in its haste to try to find some means of recompensing the plaintiff, has devised a rule with a tremendous adverse impact upon hundreds of thousands of property owners. However, as we all know, not every injury will result in the imposition of legal liability and not every injury is legally compensable. The burden now cast upon the innocent landowner by the majority herein is far greater than any burden that might befall this plaintiff by adhering to traditional case law. Accordingly, I vote to affirm the judgment insofar as appealed from.

KOOPER and SULLIVAN, JJ., concur with KUNZEMAN, J. P.; BALLETTA, J., dissents in a separate opinion.

Ordered that the judgment is reversed insofar as appealed from, on the law, and a new trial is granted to the plaintiff on her causes of action against the defendants and third-party plaintiffs, with costs to abide the event. The findings of fact are affirmed.