Pamela SUTERA, and James Sutera,
Plaintiffs–Appellants,

v.

GO JOKIR, INC., Defendant–Appellee.

No. 200, Docket 95–7222.

United States Court of Appeals,
Second Circuit.

Argued Oct. 13, 1995.

Decided June 17, 1996.

Howard B. Felcher, New York City (Felcher & Felcher, New York City, of counsel), for Plaintiffs–Appellants.

Andrew Zajac, Jericho, New York (Ross P. Masler, Fiedelman & Hoefling, Jericho, New York; Jacobowitz, Garfinkel & Lesman, New York City, of counsel), for Defendant–Appellee.

Before NEWMAN, Chief Judge, CARDAMONE and CABRANES, Circuit Judges.

CARDAMONE, Circuit Judge:

■ This diversity tort action between plaintiffs, residents of Florida, and defendant, a New York corporation, arises from a slip-and-fall accident in a suburban shopping mall. The defendant is the owner of an easement in the parking lot where the fall occurred. An easement is an interest in land giving its owner the right to enjoy a limited use in the land of another, free from the interference of third persons or even from the owner of the land itself. As one might suspect, exercising the rights given by an easement has a price. Here that price is that the owner of the easement assumed a duty of due care towards third persons.

The plaintiffs are Pamela and James Sutera. They appeal from a decision of the United States District Court for the Southern District of New York (Sweet, J.) that granted summary judgment in favor of the defendant, Go Jokir, Inc., the owner of the easement.

## BACKGROUND

The facts are relatively straightforward. The 40–year–old plaintiff, Pamela Sutera, was employed as a police radio dispatcher by the Village of Spring Valley, New York. On March 17, 1993, accompanied by her lieutenant, she drove to the Spring Valley Civic Center to pick up uniforms. Returning to the Village Police Department, located at 200 North Main Street, she parked in the parking lot. After exiting her auto, and while walking towards her place of employment, she slipped and fell on a mound of ice covered by snow. As a result, she alleges, she suffered back injuries and incurred damages.

Mrs. Sutera later underwent several surgical procedures for a herniated disc.

The parking lot where plaintiff fell was on property owned by the Village of Spring Valley. The parcel, known as lot 2, was one part of a subdivision of four lots previously owned by a developer, Countax Realty Co. More than two years before plaintiff fell, on August 23, 1990, Countax executed a declaration of reciprocal easements and covenants describing the four lots and providing for their integrated use as a shopping center and office complex. This declaration and a corresponding subdivision plat were filed in the County Clerk's Office in Rockland County, New York.

The declaration stated that each lot was subject to an easement for the use of certain portions of the complex as common areas. The parking lots—described in the subdivision plat—were part of the defined common areas. Owners would be allowed—along with their employees, customers, and others—to use the parking areas located on the other owners' parcels for parking, pedestrian passage, and for the specified individuals' "general use, comfort, and convenience." The declaration also gave the owners a right of self help, allowing each to perform any obligations that another owner failed to perform.

Section 4.1(b) of the recorded document provided that the owners "jointly shall perpetually preserve the shopping center" (emphasis omitted). "Preserve" was defined in § 4.1(a) as the obligation to maintain and manage the common areas "in conformity with the best standards with respect thereto as recognized and practiced in first class shopping center/office complexes" and included the obligation "to keep the parking area . . . cleared of snow and ice" (emphasis omitted). The declaration further provided in § 4.1(d) that were a municipal corporation to become an owner, then the municipal corporation would be required to "preserve" the complex—including clearing snow and ice from the parking areas—and would bill the other owners for their proportional shares. At the election of the municipality and upon notice to the other owners, however, the

municipality could cease to perform these maintenance duties, in which case the owners would jointly "preserve" the complex.

The declaration also prescribed that each owner would carry liability insurance, naming all the owners as insureds, covering claims of personal injury from conditions occurring on its property, including any portions designated as common areas. All the obligations set forth in the declaration were to be construed as covenants running with the land.

On February 1, 1991 Countax conveyed lot 2 to the Village of Spring Valley. Four months later, on May 31, Countax transferred the remaining parcels—lots 1, 3, and 4—to defendant Go Jokir. Go Jokir insists it has never undertaken any maintenance activities on lot 2. Any removal of snow and ice from the parking area apparently has been performed by the Village of Spring Valley.

After her March 1993 accident, Mrs. Sutera filed a workers' compensation claim because the injuries occurred in the course of her police department employment. Her compensation from the Spring Valley Police Department included several months' full pay and ongoing disability payments. On February 8, 1994 she and her husband, James Sutera, filed the instant complaint against Go Jokir in the Southern District of New York. The first cause of action alleges that Go Jokir, through its negligence, failed to correct a hazardous situation in the parking lot at 200 North Main Street and thereby caused the various injuries arising from plaintiff's fall. The second cause of action alleges James Sutera's loss of consortium.

Following the completion of pretrial discovery, Go Jokir moved for summary judgment on the ground that it owed no duty of care to plaintiff under New York law. The plaintiffs cross-moved for partial summary judgment, arguing that defendant owed a duty under the terms of the easement document and as an owner of the dominant estate. The district court granted defendant's motion for summary judgment and denied the cross-motion. It reasoned that although an easement holder ordinarily has a duty to keep an easement in repair, under the terms of the easement document the municipality

was responsible for maintaining its own lot. From a judgment in favor of defendant entered on January 17, 1995, plaintiffs appeal. We reverse.

## ANALYSIS

We review the decision granting summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party, *see Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993), and giving no deference to the district court's determination of New York law, *see Salve Regina College v. Russell*, 499 U.S. 225, 231–34, 111 S.Ct. 1217, 1221–23, 113 L.Ed.2d 190 (1991). Instead, it is our task to ascertain and apply New York law. *See West v. American Tel. and Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

Two questions of that state's law are presented by this appeal: the first is whether Go Jokir, as holder of the dominant tenement, owed a duty of reasonable care to the injured plaintiffs; the second is, if so, whether a covenant requiring the municipality to clear snow and ice from the parking areas abrogated that duty. Although it appears that the Court of Appeals, New York's highest court, has not addressed these precise questions, "[a] state is not without law save as its highest court has declared it." *Id.* at 236, 61 S.Ct. at 183. Rather, New York's decisional law persuades us that its courts would, under the instant circumstances, impose a duty of reasonable care upon the holder of the easement, and would further rule that once such a duty exists, it may not be abrogated by covenant.

### I. Easement Interests in General

To ascertain the appropriate law governing in this case, it is necessary to explore briefly the New York law of easements.

Although easements may be created in a variety of ways, fundamentally they are defined by the rights and obligations they create. An easement is more than a personal privilege to use another's land, it is an actual interest in that land. *Trustees of Southampton v. Jessup*, 162 N.Y. 122, 126, 56

N.E. 538 (1900). In the case of an affirmative easement, the owner of the dominant tenement—the easement holder—acquires or is granted a right to use another person's land in a particular, though limited, way. The grant carries with it those rights necessary to effectuate the easement's exercise and enjoyment. *See Bliss v. Greeley*, 45 N.Y. 671, 674 (1871). The grantor or servient tenement owner retains a possessory interest in the land, and can use it for any purpose consistent with the dominant owner's or grantee's enjoyment of the easement. *See Bakeman v. Talbot*, 31 N.Y. 366, 370 (1865). Although no affirmative duty is imposed on the servient owner, there is a passive duty that it not interfere with the dominant owner's exercise of its easement rights. *See Greenfarb v. R.S.K. Realty Corp.*, 256 N.Y. 130, 134, 175 N.E. 649 (1931) ("No easement imposes a duty upon the owner of a servient tenement other than a passive duty.... "); *Streuber v. E.E. Meacham & Son*, 163 A.D. 574, 575, 148 N.Y.S. 983 (2d Dep't 1914) ("The duties on the servient owner are negative—to refrain from interfering with the use[ ] granted.").

■ As a corollary to the rule that an easement imposes no affirmative duty on the servient owner, it developed that the duty to maintain and repair structures or facilities existing under an easement rests on the dominant, not the servient, owner. *See Herman v. Roberts*, 119 N.Y. 37, 42, 23 N.E. 442 (1890); *McMillan v. Cronin*, 75 N.Y. 474, 477 (1878). This rule is invoked in disputes between servient and dominant owners to decide which party is required to make repairs. *See, e.g., Muxworthy v. Mendick*, 66 A.D.2d 1017, 1019, 411 N.Y.S.2d 737 (4th Dep't 1978) (dispute over responsibility for clearing snow); *Schenectady Ry. v. Greene*, 227 A.D. 11, 15, 236 N.Y.S. 477 (3d Dep't 1929) (dispute over obligation to repair a bridge), *aff'd*, 257 N.Y. 610, 178 N.E. 816 (1931). A recognized exception to the general rule that the owner of the servient tenement owes no affirmative duty is that the servient owner may be required to perform maintenance functions if a covenant so provides or in other "special circumstances." *Greenfarb*, 256 N.Y. at 135, 175 N.E. 649; *Elzer v. Nassau*

*County*, 111 A.D.2d 212, 213, 489 N.Y.S.2d 246 (2d Dep't 1985).

## II. Duty of Easement Owners to Third Parties

■ With these general rules regarding the creation of rights and duties under easements in mind, we turn to the specific duties owed by easement grantees towards third parties coming onto the easement. A *prima facie* case of negligence—whether it involves a condition on land or some other type of hazard—requires a showing that the defendant owed a duty of reasonable care to the plaintiff, that such duty was breached, and that the breach was the proximate cause of plaintiff's injury. In the present case we are concerned with the first of these elements.

### A. Connection Between Ownership of Easement and Duty

■ In cases involving liability for injuries arising from conditions on property, the existence of a duty generally depends upon "occupancy, ownership, control or a special use of [the] premises" by the defendant. *Balsam v. Delma Eng'g Corp.*, 139 A.D.2d 292, 296, 532 N.Y.S.2d 105 (1st Dep't 1988); *cf. Dick v. Sunbright Steam Laundry Corp.*, 307 N.Y. 422, 424, 121 N.E.2d 399 (1954) (tort liability to tenant or third party "is an incident to occupation and control" of premises by landlord); Restatement (Second) of Torts § 328E (1964) (defining "possessor of land" generally as a person in occupation with intent to control land); Restatement § 343 (possessors subject to liability for certain conditions on land). The doctrine of special use, which does not apply here, requires those subjecting a public way to a special use for their own benefit to maintain the relevant part of the way in a safe condition. *See Balsam*, 139 A.D.2d at 298, 532 N.Y.S.2d 105. Thus, in deciding whether the owner of an easement owes a duty of care towards third persons, the pivotal question is whether the easement holder may fairly be said to occupy, own, or control the relevant property, a subject we discuss in a moment.

■ New York courts have indicated on several occasions that the holder of an ease-

ment may owe a duty toward third parties. *See, e.g., Lurie v. Child's Hosp.,* 70 A.D.2d 1032, 418 N.Y.S.2d 176 (3d Dep't 1979) (possibility of retention by defendant of easement interest over driveway, in negligence action, created material question of fact with respect to ownership and responsibility for design, construction, maintenance, and control); *Holden v. Boyle,* 80 A.D.2d 281, 284–85, 439 N.Y.S.2d 534 (4th Dep't 1981) (third-party defendant electrical utilities holding easements permitting tree-trimming adequately discharged the duty attaching to the ownership of land without trimming branches to protect young tree-climbers, because injury to such climbers was unforeseeable); *Cesario v. Chiapparine,* 21 A.D.2d 272, 276–77, 250 N.Y.S.2d 584 (2d Dep't 1964) (where plaintiff slipped on ice in right-of-way, dominant owner's duty was that owed by an owner to a licensee); *Leonard v. Home Owners' Loan Corp.,* 270 A.D. 363, 368, 60 N.Y.S.2d 78 (3d Dep't 1946) (dismissal of tort suit against easement holders appropriate because there was insufficient evidence of negligence on defendants' part), *aff'd,* 297 N.Y. 103, 75 N.E.2d 261 (1947); *cf. Elzer,* 111 A.D.2d at 213, 489 N.Y.S.2d 246 (although servient owner has no duty to maintain an easement, trial was required because of absence of evidence of grant of easement of right-of-way and uncertainty regarding location of accident).

As the foregoing discussion suggests, the circumstances surrounding the grant of an easement and its use are sufficiently diverse so as to preclude a universal rule either of liability or immunity for easement owners in actions for wrongs brought by third parties.

### B. Duty of Servient and Dominant Easement

#### Owners to Third Parties

When considering therefore whether there is a duty owed to third parties by the owner of a dominant or servient tenement, the circumstances which define the easement's existence are critical. Four examples will illustrate why there is no uniform rule regarding easement owners' liability to third parties. The four examples are where:

(1) a condition exists on a servient owner's property, but it is not situated on a part of the property subject to the easement; (2) a condition exists in the part of the property subject to the easement, but the dominant owner has not exercised the rights granted to it, e.g., has not yet built a roadway; (3) an injury occurs in a place where the dominant owner is exercising its rights and the servient owner is also able, for its own purposes, to use the granted property; (4) dominant owner's rights in the property subject to the easement are so exclusive that servient owner retains no rights whatever over the subject easement, and an injury occurs where the dominant owner has such exclusive control. We think that under New York law in examples (1) and (2) the dominant owner owes no duty of reasonable care to third parties, in (3) both the dominant and the servient owner owe such a duty, and in (4) only the dominant owner of the easement owes a duty to third parties.

Discussion now turns to an analysis of the decisional law that we believe supports those results. The first example assumes a condition existing within the servient tenement unrelated to the portion of the grantor's property subject to the easement. For instance, an easement allows a right-of-way over the southwest corner of the servient lot, but a dangerous condition in the northeast corner of the lot causes injury. The dominant owner's interest is clearly unrelated to the hazardous condition and no duty of due care would be owed by it to third persons injured in the northeast portion of grantor's property. *See Monaghan v. SZS 33 Assocs., L/P.,* 760 F.Supp. 355, 360 (S.D.N.Y.) (where dominant owner held easement for use of a vestibule and plaintiff suffered injury on an adjacent stairway, no duty was owed), *aff'd without opinion,* 953 F.2d 635 (2d Cir.1991).

The second situation involves a dominant easement owner who has the right to use the adjoining land of another for a certain purpose, but has declined to exercise that right and has chosen not to interfere with the servient owner's enjoyment of its property. Under such circumstances, the dominant owner owes no duty to a third party injured on the part of the property subject to the

easement. Although the rules governing the respective maintenance duties of dominant and servient owners have been applied in tort actions brought by third parties, *see, e.g., Elzer,* 111 A.D.2d at 213, 489 N.Y.S.2d 246, because there is nothing for the dominant easement holder to maintain in this example, it owes no duty. This result is illustrated by *Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363 (Tex.Ct.App.1994), where the plaintiff was injured while diving from a boat ramp subject to an easement allowing the dominant owner to engage in various activities. Despite the general rule that an easement holder has a duty to "maintain the easement," the court held the dominant owner owed no duty to plaintiff because it had not "owned, possessed, operated or maintained control" of the ramp, nor had it made use of the easements reserved to it. *Id.* at 367.

The third scenario involves a dominant owner who exercises her rights under an affirmative easement and a servient owner who—without interfering with the legitimate activities of the easement holder—is able to use the property for her own purposes. An example would be where an easement gives the dominant owner a non-exclusive right-of-way over a certain part of the servient property, both the dominant and servient owners use that part of the property as a road, and a third party is injured by a dangerous condition in the road. In such a case, both owners appear to owe a duty: the servient owner owes the ordinary duty of a landowner, and the dominant owner owes the duty stemming from the obligation to maintain and repair the easement.

*Cesario* is such a case. There plaintiff slipped on ice in an alleyway subject to an easement. The dominant owner used the alleyway as a driveway and the servient owner used it to discharge rainwater from her roof. *Cesario,* 21 A.D.2d at 274, 250 N.Y.S.2d 584. Noting that a landowner's duty under New York law then depended entirely on plaintiff's status as an invitee, licensee, or trespasser, the Second Department held that the dominant owner was not liable because the injured plaintiff was, as to her, only a licensee, but the servient owner owed a duty because the plaintiff was, as to

her, an invitee. *Id.* at 276–77, 250 N.Y.S.2d 584.

Thus, joint liability can attach where the property is used by both the dominant and servient owners. *See Mills v. City of New York,* 189 Misc. 291, 294, 71 N.Y.S.2d 507 (Sup.Ct.1947) (indemnity denied against holder of easement across icy sidewalk because servient owner was concurrently liable with dominant owner and no indemnity lies between tort-feasors *in pari delicto* ); *Janes v. Politis,* 79 Misc.2d 941, 943, 361 N.Y.S.2d 613 (Sup.Ct.1974) (burden of repairing and maintaining sewage facilities installed pursuant to easement was borne by both the dominant and the servient owners, because the parties' relationship was analogous to owners of easements in common).

In the fourth example, the injurious condition is so closely tied to the exercise of the easement holder's rights that the servient owner could not act to prevent the injury. In this example, the dominant owner would clearly owe a duty of reasonable care to third parties to alleviate the hazard, while the servient owner—though having a possessory interest in the estate—might owe no duty. The facts of *Green v. Duke Power Co.,* 305 N.C. 603, 290 S.E.2d 593 (1982), are apt. In *Green,* the defendant power company held an easement allowing it to maintain a ground-level transformer on property owned by the city housing authority, and plaintiff child was injured when she touched the transformer. Because the easement deprived the housing authority of control over this equipment, only the power company owed a duty of care to the child. *Id.* 290 S.E.2d at 598–99; *cf. Hartman v. Walkertown Shopping Ctr., Inc.,* 113 N.C.App. 632, 439 S.E.2d 787, 791 (although *Green* held that a servient owner has no duty to *repair* transformer because the easement divested it of control, here servient owner did have duty to *warn* invitee of a water meter hole maintained by sanitary district), *review denied,* 336 N.C. 780, 447 S.E.2d 422 (1994).

### C. *Control as Key Factor Subjecting Easement Owner to Third Party Liability*

Of course not all personal-injury cases involving easements fit neatly within

one of the four categories described above— the above examples demonstrate we believe that no one rule of liability governs all easement owners. Instead, as we stated earlier, the imposition of a duty on an owner depends on whether—in light of the rights granted under the easement, as well as the activities undertaken pursuant to those rights—the dominant owner has sufficient control to warrant treatment as a landowner for tort purposes. This notion is consistent with New York decisions imposing liability on easement holders and with the general rule governing the imposition of a duty for premises liability, see, e.g., Balsam, 139 A.D.2d at 296, 532 N.Y.S.2d 105 (duty is based on occupancy, ownership, or control); Rolnick v. El Al Israel Airlines, Ltd., 551 F.Supp. 261, 264 (E.D.N.Y.1982) (liability extends to those occupying or controlling premises), and with the proposition that the liability of a lessee for hazards in a parking lot depends upon its control of the lot, see Shire v. Ferdinando, 161 A.D.2d 573, 574, 555 N.Y.S.2d 151 (2d Dep't), appeal denied, 76 N.Y.2d 713, 563 N.Y.S.2d 769, 565 N.E.2d 518 (1990).

This rule also coincides with decisions in other jurisdictions. Although such decisions are somewhat uncommon, those that have addressed the tort liability of an easement holder have adopted the "control" test posited a moment ago. See McDermott v. Metropolitan Sanitary Dist., 240 Ill.App.3d 1, 180 Ill.Dec. 758, 772, 607 N.E.2d 1271, 1285 (1992) (tort duty imposed on municipality holding easement in ditch because easement allowed it to use and exercise some control and it used and controlled the ditch); Wagner v. Doehring, 315 Md. 97, 553 A.2d 684, 689 (1989) (holding in tort action by injured trespasser, that "the holder of an easement for ingress and egress is afforded the same protection to which a landowner is entitled ... when the easement holder exercises a degree of control over the land which permits the holder to exclude trespassers from the easement"); McLaughlin v. Bardsen, 50 Mont. 177, 145 P. 954, 956 (1915) (easement holder in possession of land at the place of injury treated as a landowner in action by trespasser); Green, 305 N.C. 603, 290 S.E.2d 593 (easement holder with exclusive right to control transformer, and not servient owner, owed tort duty to third party); Cooper v. City of Reading, 392 Pa. 452, 140 A.2d 792, 796–97 (1958) (municipality with power under easement to enter a canal bed and make alterations and repairs liable as a possessor of land for injury occurring on easement); Leichter v. Eastern Realty Co., 358 Pa.Super. 189, 516 A.2d 1247, 1250 (1986) (liability of holder of easement for use of parking lot depended on whether holder was "in possession," in light of its rights under the easement and the exercise thereof), appeal denied sub nom. Leichter v. Acme Markets, Inc., 515 Pa. 581, 527 A.2d 542 (1987); Roberts, 886 S.W.2d at 367 (no premises liability where easement holder failed to exercise easement rights); cf. Hankard v. Beal, 543 A.2d 1376, 1378 (Me.1988) (lessor's liability for slip-and-fall in icy parking lot depends on degree of control retained); Reyna v. Ayco Dev. Corp., 788 S.W.2d 722, 724 (Tex.Ct.App. 1990) (servient owner owed no duty to child injured by electrical switching cabinet installed and exclusively controlled by city under an easement). See also Jill D. Neiman, Note, Easement Holder Liability Under CERCLA: The Right Way to Deal with Rights–of–Way, 89 Mich.L.Rev. 1233, 1242–48 (1991) (common-law decisions focus on extent to which easement holder controls the property subject to the easement, including the nature of the rights and the extent to which they are exercised).

### III. Resolution of Instant Case

In the present case defendant sufficiently controlled the relevant portion of the subdivision to warrant the imposition of a duty of care toward third parties. We note initially that the accident occurred in that part of the municipality's property that was subject to an easement. Section 3.3 of the declaration stated that the common areas, including the parking lots described in the subdivision plat, were subject to easements for the general use of all the owners for their intended purposes. Because the accident occurred in a common area, the defendant cannot avoid liability on the basis that the injury was—as in the first hypothetical situation described above—unrelated to the property subject to the easement.

In addition, the nature of the rights enjoyed under the easement gave defendant the authority to take steps to prevent the type of injury alleged in the complaint. Concededly the declaration included a covenant requiring the Village of Spring Valley, when it acquired a fee interest in lot 2 of the subdivision, to clear snow and ice from the parking areas, according to the "best standards" for such complexes. Under the plain terms of the declaration, however, the other owners of the subdivision lots retained the right to enter the premises and perform any obligations the municipality failed to fulfill. This right, even if it had not been expressed in the easement document, would in any event have existed under the common law. *See Herman,* 119 N.Y. at 42, 23 N.E. 442 (conveyance of easement gives grantee rights incident to enjoyment of easement).

Hence, as a holder of an easement over lot 2, Go Jokir was entitled to remedy any deficiency in the municipality's snow-clearing activities. But, as explained above, the authority to maintain property so as to prevent accidents does not automatically give rise to a duty on the part of a dominant easement owner. If Go Jokir had declined to make use of the rights secured under the recorded declaration—as in the second hypothetical and as did the defendant in *Roberts,* 886 S.W.2d at 367—it would have had only an inchoate right, and would owe no duties to third parties. Defendant concedes, however, that it shared the parking lot where plaintiff was injured with the customers and tenants of the shopping center and also with the municipality. Go Jokir therefore made use of its rights under the easement.

Because defendant exercised its rights and had the authority to ensure that the common areas were well-maintained, this case is similar to *Cesario,* which imposed on a dominant owner the duty owed by possessors of land toward their licensees. In that case, the defendant easement holder made use of a right-of-way, and the defendant servient owner could use the way for any purposes not inconsistent with the easement. As a result, both defendants owed the duty of a landowner, which was then dependent upon the status of the plaintiff vis-à-vis the defen-

dant. *Cesario,* 21 A.D.2d at 276–77, 250 N.Y.S.2d 584. Although the rigid status distinctions have since been abolished in New York, *see Basso v. Miller,* 40 N.Y.2d 233, 240, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976), the principle that an easement holder may owe a duty remains.

Relying on *Turrisi v. Ponderosa, Inc..* 179 A.D.2d 956, 578 N.Y.S.2d 724 (3d Dep't 1992), Go Jokir contends it had no control over the parking lot. In *Turrisi,* the plaintiff was injured in a parking lot adjacent to premises leased by the defendant restaurant. The lease required the lessor to maintain the parking lot, and it gave the defendant the non-exclusive right to use it. *Id.* at 958, 578 N.Y.S.2d 724. The court held as a matter of law that the lessee exercised no control over the parking lot because it was unable to exclude others from this common parking area. Such reasoning is not applicable in the case at hand. Go Jokir, as the holder of a property interest, was entitled to exclude others—even the municipality—from using the premises in a manner inconsistent with its easement rights. *See Herman,* 119 N.Y. at 42, 23 N.E. 442. In addition, the easement gave Go Jokir the right to enter the premises and perform maintenance activities itself, a right not held by the lessee in *Turrisi.*

Were a New York court deciding the instant case we think it would take into account the circumstances surrounding the ownership and exercise of the easement, rather than applying a technical rule derived from cases involving the respective duties of property owners as opposed to duties to third parties. *See Balsam,* 139 A.D.2d at 300, 532 N.Y.S.2d 105 ("[T]he question of imposition of a duty is one of policy and common sense, not technicalities."). As a consequence, we hold that the occurrence of the accident in the parking lot on lot 2, a parcel subject to the easement, along with the nature of the rights embodied in the easement giving defendant Go Jokir the right to control the premises, and its use of those rights, gave rise to a duty on its part of reasonable care toward plaintiffs.

**IV. Delegation of Easement Holder's Duty**

▮ Defendant further insists any common-law duty it owed was altered by the

declaration of easements, which placed on the municipality—the owner of the servient tenement—the burden to clear snow and ice from the parking area. The success of the argument is hinged primarily on the applicability of an exception to the general rule that a servient owner has no duty to maintain and repair those facilities located on the property subject to the easement, that is, that a covenant can bind the servient owner to perform such activities and relieve the dominant owner of its obligations. But like Icarus, who plummeted into the sea when he flew so close to the sun that his wax wings melted, the abrogation of duty by contract argument, when examined in the light of day, also falls.

In the first place, defendant cites no authority suggesting that a servient owner may by covenant relieve the dominant owner of the duty to maintain that it would otherwise owe to third parties. Go Jokir relies on *Greenfarb,* a case in which a real estate purchaser sought the return of a down payment. The contract of sale provided that the property was unencumbered but that the transfer was subject to "restrictions and easements," and it turned out that defendant's predecessor had covenanted to maintain a certain road across the parcel. *Greenfarb,* 256 N.Y. at 132–33, 175 N.E. 649. Noting that a servient owner has no duty to repair but may be so bound by express contract or by "special circumstances," the Court of Appeals denied the claim. It held that such a covenant, while not technically an easement, was among the restrictions provided for in the sale document. *Id.* at 136–37, 175 N.E. 649.

Thus, *Greenfarb*'s ruling was on the contract dispute, addressing only the rights and duties between buyers and sellers, on the one hand, and dominant and servient owners, on the other. It did not discuss or purport to rule on the impact of a covenant to repair with respect to an easement owner's liability to a third party injured on that part of the parcel subject to the easement. Nor was there any intimation that such a covenant relieved an easement holder of any obligation whatever, let alone the obligation to exercise due care toward third parties using property subject to an easement.

*Monaghan,* also cited by defendant, is similarly unhelpful to it. In that case, a commuter sought to recover against a building owner for injuries from a criminal assault. The defendant held an easement over a vestibule leading to a stairway. The district court ruled first the defendant owed no duty because the assault occurred in the stairway, which was not subject to the easement. Second, the court held that whatever duty was owed was, in any event, not breached, because the incident was not reasonably foreseeable. *Monaghan,* 760 F.Supp. at 360–62. These alternative holdings properly reflect that an easement holder is subject to liability only for injuries arising from conditions occurring within the physical limits of the easement. Any suggestion in *Monaghan* that the provisions of a covenant by the servient owner can remove the dominant owner's duty with respect to third parties, however, had its source in the contract rule allowing a servient owner to assume a contractual duty with respect to the dominant owner of the easement. *See Monaghan,* 760 F.Supp. at 359 (citing *Greenfarb* ). We are aware of no New York precedent applying such a *contract rule* to the detriment of an injured third party in a tort action.

Nor does the defendant advance any sufficient legal reason for absolving an easement holder of any tort duty where, as here, the easement holder makes use of its easement rights and has a sufficient degree of control to help prevent injuries on the servient property. Once it is determined that the defendant, as the owner of an easement, owes the duty of a landowner, the next question to be answered is whether the duty was breached. Therefore, the scope of the defendant's duty now depends entirely on whether the defendant maintains the property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Basso,* 40 N.Y.2d at 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (quoting *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 100 (D.C.Cir.1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973)); *see Holden,* 80 A.D.2d

at 284–85, 439 N.Y.S.2d 534 (applying *Basso* rule to action against easement holders).

Although there appears to be no New York decision squarely holding that the tort duty of an easement holder is not delegable, decisional law supports that proposition. A dominant owner's duty, because it is predicated on ownership or control, is the same as that owed by a landowner. Certain of these duties are held to be non-delegable—that is, liability is imposed even though the injury results from the negligence of an independent contractor. *Thomassen v. J & K Diner, Inc.*, 152 A.D.2d 421, 424, 549 N.Y.S.2d 416 (2d Dep't 1989), *appeal dismissed*, 76 N.Y.2d 771, 559 N.Y.S.2d 979, 559 N.E.2d 673 (1990).

Such a duty arises, for example, "whenever the general public is invited into stores, office buildings and other places of public assembly." *Id.* The same principle applies to the present case, which involves an easement holder's duty of care toward persons using a common area in a shopping and office complex. Because New York courts have ruled that premises liability extends to "possessors," *see Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 519, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980); *Thomassen*, 152 A.D.2d at 426, 549 N.Y.S.2d 416, and "occupier[s]," *see Basso*, 40 N.Y.2d at 239, 386 N.Y.S.2d 564, 352 N.E.2d 868, as well as to owners, we have little doubt that the non-delegability principle applies to those easement holders who owe a tort duty.

*Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 51 A.D.2d 140, 379 N.Y.S.2d 873 (4th Dep't 1976), is instructive in this regard. In that case, a sponsor of a musical event executed a short-term lease and an operating agreement according to which the lessor was to provide adequate security. After a rampage by an unruly crowd, an injured concessionaire claimed that the sponsor was negligent. The court held that the contractual duty of the lessor did not remove any legal duty the sponsor might owe to the plaintiff—instead, the scope of the duty depended on whether the defendant should have reasonably apprehended a risk. *Id.* at 144, 379 N.Y.S.2d 873. Similarly, regardless of any covenants binding the owner of the servient parcel, an easement holder should not be able to escape a duty it owes to third parties.

In addition, the policies underlying the non-delegation doctrine apply equally to the instant case. The doctrine is based on the notion that the defendant derives a benefit from the work performed, that it is in a position to insure against personal injuries and to bear the expense as a cost of doing business, and that it is in a position to remedy dangerous conditions. *See Thomassen*, 152 A.D.2d at 426–27, 549 N.Y.S.2d 416. The defendant in the present case, as the owner of the easement and the adjacent parcels in the shopping complex, benefits from the activities on the servient parcel and can cover the cost of its negligent acts to the same extent as any other owner or operator.

Moreover, the dominant owner may be entitled to indemnity from the servient owner, *cf. Burgundy Basin Inn*, 51 A.D.2d at 144, 379 N.Y.S.2d 873 (while agreement requiring third party to provide security does not obviate tort duty to plaintiff, it might entitle defendant to indemnity), or may be able to extract a promise of indemnification from the servient owner. Indeed, § 5.1 of the declaration of easements in the instant case required each owner to indemnify the others against liabilities arising from injuries on their property, including those occurring in any of the common areas. The document also required each owner to carry liability insurance for such claims. These provisions illustrate that the cost of imposing a duty on an easement holder can be managed in practice, and that the easement holder will generally be in a better position than the injured plaintiff to bear or shift the cost. *Cf. Thomassen*, 152 A.D.2d at 427, 549 N.Y.S.2d 416 (possessor can incorporate expenses into cost of doing business).

Consequently, we hold that the defendant's duty to exercise reasonable care toward third parties making use of the parking lot subject to the easement, once established, is not abrogated by a covenant on the part of the servient owner to clear ice and snow from the lot. The general rule that a servient owner may assume duties of maintenance, while undoubtedly relevant as between dominant and servient owners, does not apply

when the rights of injured third parties are implicated, as in the present case.

## CONCLUSION

For the reasons stated, the judgment of the district court granting summary judgment to the defendant is reversed and the case is remanded for a trial on the merits, in a manner not inconsistent with this opinion.