[759 NYS2d 58]

Frank Piluso, Respondent, v Bell Atlantic Corporation et al., Defendants, and Edgewater Park Owners Cooperative, Inc., Appellant.

First Department, May 6, 2003

### APPEARANCES OF COUNSEL

*Alexander J. Wulwick* of counsel (*Sonin & Genis*, attorneys), for respondent.

*James J. Keefe, Jr.*, of counsel (*John P. Rooney* on the brief; *Montfort, Healy, McGuire & Salley*, attorneys), for appellant.

### OPINION OF THE COURT

Sullivan, J.

At approximately 6:00 P.M. on January 12, 1999, plaintiff

was jogging with his dog in the rear parking lot of a 55-acre housing complex of single-family homes in the Bronx, known as Edgewater Park, owned by defendant Edgewater Park Owners Cooperative, Inc. (EPOC), an area in which he had never jogged before. It was dark and hazy and visibility was poor. While jogging, plaintiff tripped and fell over an outer anchor guy wire running from a utility pole to the ground, sustaining, as a result, a fracture of the fourth and fifth metacarpals. The pole to which the guy wire was attached is owned by Consolidated Edison (Con Ed). The outer guy wire over which plaintiff tripped extended approximately 10 to 15 feet from the base of the pole and is owned by Cablevision. The inner guy wire is owned by Verizon.

By agreement dated March 31, 1936, The Park of Edgewater, Inc., EPOC's predecessor, granted and conveyed to Con Ed's predecessor, The Bronx Gas and Electric Company, "the lines of poles, and/or subway together with necessary, stubs, guys, anchors, lateral connections * * * used for * * * transmitting and distributing electricity and any and all electrical appliances and apparatus of every kind, nature or description whatsoever and wheresoever situated within or upon the said tract of land." In addition, the agreement granted Con Ed's predecessor an exclusive right and easement to enter the property to construct, maintain and replace the poles, guys, anchors and various electrical appliances. EPOC is therefore the servient owner of the easement and Con Ed is the dominant owner.

In bringing this action against EPOC and others, plaintiff alleges that EPOC installed the guy wires in question and thereafter failed to maintain them in a safe and reasonable condition. After joinder of issue, EPOC moved for summary judgment, arguing that it did not install, own or maintain the utility pole and the appurtenant anchor guy wire over which plaintiff fell. The IAS court denied the motion, finding issues of fact as to whether EPOC properly maintained or protected the premises. We affirm.

Noting that a servient owner has no duty to maintain an easement and, indeed, has a duty to refrain from interfering with the rights of the dominant owner (*Tagle v Jakob*, 97 NY2d 165, 168 [2001]), EPOC argues that, as the servient owner, it has no duty to plaintiff and cannot be held liable for his injuries. Through uncontradicted and unrefuted evidence, EPOC has demonstrated that it did not own or control the utility pole or the anchor guy wire involved in plaintiff's accident;

the evidence shows that the pole in question is owned by Con Ed and that the two anchor guy wires attached to it are owned by Verizon and Cablevision, respectively. EPOC had no maintenance responsibilities with respect to the electrical apparatus and owed no duty to plaintiff to remedy the assertedly dangerous condition by virtue of its status as the servient owner (*see id.* at 168-169).

Plaintiff's attempt to create an issue of fact as to whether EPOC maintained the utility pole by referring to the deposition testimony of Mr. Walker, EPOC's manager, that "[w]e do certain things, but we do it with permission of them or we don't ask and we think whatever has to be done, whatever," must fail. As plaintiff concedes, Mr. Walker did not specify what those "certain things" were. Plaintiff's counsel did not ask him to be more specific and failed to ask any follow-up questions. Thus, the suggestion that EPOC did "certain things" to the pole or guy wire is pure speculation and cannot be used to defeat summary judgment (*G. Edelstein & Co. v Ambassador Ins. Co.*, 86 AD2d 83 [1982], *appeal dismissed* 59 NY2d 763 [1983]). In any event, when asked how he "define[d] the duties or responsibilities with respect to these guy wires at the point where they attach to the ground," Mr. Walker responded, "At Edgewater, we don't touch—have nothing to do with guy wires. They're not ours and that's that * * * ." In addition, he stated, "Basically, those are the property of the utility company. If there's a problem, we call and refer it to the utility company for correction."

There is, however, a question as to whether EPOC may be liable to plaintiff under a theory that it failed to warn of the danger presented by the guy wire which allegedly caused plaintiff's injuries (*see Tagle*, 97 NY2d at 168). In this regard, it is well settled that landowners owe a duty to maintain their property in a safe condition (*Basso v Miller*, 40 NY2d 233, 241 [1976]). This duty includes protecting against or warning of dangerous conditions on the premises (*Tagle* at 169; *Pinero v Rite Aid*, 294 AD2d 251, 252 [2002], *affd* 99 NY2d 541 [2002]). While "a landowner has no duty to warn of an open and obvious danger[,] * * * a latent hazard may give rise to a duty to protect entrants from that danger" (*Tagle* at 169; *Pinero* at 252). Whether a hazard is latent or open and obvious is generally a question of fact for the jury (*Tagle* at 169; *Walters v County of Rensselaer*, 282 AD2d 944 [2001]). In connection with his claim that EPOC had notice of an unsafe condition, plaintiff's bill of particulars stated that "this hazardous and

dangerous condition is readily apparent and visible." We do not view this assertion as inconsistent with a theory of liability predicated on a duty to warn. In that regard, plaintiff testified at his deposition that, given his unfamiliarity with the area and the fact that at the time of his accident it was dark and hazy, he did not see the wire prior to tripping over it. Of course, any failure on plaintiff's part to exercise reasonable care for his own safety goes to comparative negligence, another issue. Under the circumstances, questions of fact for jury resolution are presented.

EPOC's reliance on *Green v Duke Power Co.* (305 NC 603, 290 SE2d 593 [1982]), cited by the Second Circuit Court of Appeals in *Sutera v Go Jokir, Inc.* (86 F3d 298, 304 [1996]), which contains a thorough analysis of the law of easements under New York State law, is misguided. In *Green*, the plaintiff, a five-year-old girl, was injured when she touched an allegedly exposed electrified portion of a ground-level transformer owned and maintained by the defendant power company, pursuant to an easement granted to it, on land that was owned and leased, respectively, by the third-party defendants. The court affirmed the grant of summary judgment in favor of the third-party defendants, holding that "[a]ny interference or tampering with [the power company's] transformer would clearly encroach upon the rights granted [the power company] by the easement" (305 NC at 611, 290 SE2d at 598) and that "the owner of the servient tenement is under no duty to maintain or repair it, in the absence of an agreement therefor" (*id.*). Noting that "neither the owner nor the occupier of the property on which the transformer was located had the right to deny access to [it] or to remedy the dangerous condition of the device" (*id.*), the court concluded that the "dispositive issue" (305 NC at 610, 290 SE2d at 598) was "not whether [the owner and occupier of the property] knew of the dangerous condition of the transformer, but whether they can be said to have 'suffered it to continue' * * *. We think not" (*id.* [citations omitted]).

While there are certain parallels between this case and *Green*, in that in both cases the dominant owner of the easement had the sole responsibility for maintaining the allegedly dangerous condition—respectively, the guy wire and transformer—and keeping it in repair, there are critical differences which set *Green* apart. Significantly, in *Green*, there was uncontradicted evidence that the lessee of the property, a third-party defendant, had seen the infant plaintiff playing with other children on the unlocked transformer and had warned

them "to stay away from it because someone would get hurt" (305 NC at 612, 290 SE2d at 599). The court held that, as a matter of law, by warning the infant plaintiff, the lessee "took action reasonably calculated to prevent her injury" (305 NC at 613, 290 SE2d at 599). In this case, the failure to warn is precisely what EPOC's liability is premised upon and EPOC does not claim that it took any such action.

Moreover, the problem in *Green* was not that the transformer was not visible or that plaintiff's contact with it was accidental; *Green*, on the contrary, was an attractive nuisance case. The claimed negligence was failure to keep the transformer box locked, and the court held that "[a]ny interference or tampering with [the] transformer would clearly encroach upon the rights granted to [the power company] by the easement * * * [and] locking or fencing the transformer would impair [the power company's] access to it and would be inconsistent with the terms of the easement" (305 NC at 611, 290 SE2d at 598). In this case, EPOC does not deny that it could have taken protective measures without impairing the dominant owner's rights.

The facts of this case more closely parallel another North Carolina case, *Hartman v Walkertown Shopping Ctr., Inc.* (113 NC App 632, 439 SE2d 787 [1994], *review denied* 336 NC 780, 447 SE2d 422 [1994]), also cited in *Sutera*. There, while stepping off the sidewalk in front of a store in defendant shopping center onto the parking lot blacktop, plaintiff was injured when he stepped into a depressed water meter cover sunk several inches below the level of the parking lot. The water meter cover was within an easement granted to the Walkertown Sanitary District for the installation and maintenance of water lines. Plaintiff alleged that there were no warning signs or devices to warn plaintiff of the dangerous condition and that the area was not sufficiently lit. The court held that the facts were distinguishable from *Green* and that, notwithstanding the duty of the owner of an easement to keep the easement in repair and the rule that the owner of the easement will be liable for injuries to third persons, "defendant shopping center had an affirmative duty to exercise ordinary care to maintain the premises in a safe condition and a duty to warn invitees of hidden dangers or unsafe conditions which were discoverable through reasonable inspection and supervision" (*Hartman*, 113 NC App at 638, 439 SE2d at 791). EPOC is similarly obligated.

Accordingly, the order of the Supreme Court, Bronx County (Jerry Crispino, J.), entered on or about February 22, 2002,

denying defendant Edgewater Park Owners Cooperative, Inc.'s motion for summary judgment dismissing the complaint and all cross claims against it, should be affirmed, without costs or disbursements.

TOM, J.P., MAZZARELLI, WILLIAMS and GONZALEZ, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about February 22, 2002, affirmed, without costs or disbursements.