ROBERT G. CURRY AND PAMELA CURRY, HUSBAND AND WIFE,
APPELLANTS AND CROSS-APPELLEES, V. LEWIS & CLARK
NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION,
APPELLEE AND CROSS-APPELLANT.

678 N.W.2d 95

Filed April 23, 2004.   No. S-03-086.

David Domina, James F. Cann, and Claudia L. Stringfield, of Domina Law, P.C., for appellants.

John Thomas for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is a condemnation action involving two parcels of land in Dixon County, Nebraska, which were owned by Robert G. Curry and Pamela Curry and condemned by the Lewis & Clark Natural Resources District (NRD) for a flood control and erosion prevention project. Following a jury trial, the district court for Dixon County entered judgment in favor of the Currys in the amount of $367,000. The Currys appeal from an order denying their motion for attorney fees. The NRD cross-appeals, contending that the district court erred in excluding certain expert testimony and in instructing the jury.

## FACTS

At all relevant times, the Currys resided in Dixon County and owned two parcels of land situated in that county which we will refer to as "Parcel 1" and "Parcel 2." The NRD determined that Parcel 1 was required for the construction of a flood control and erosion prevention project known as the Powder Creek Project, or more formally referred to as the "Aowa Creek Watershed Project Structure #31-20A." The NRD further determined that a perpetual easement over Parcel 2 was required for the project.

Appraisers appointed by the county court for Dixon County determined damages attributable to the taking of Parcel 1 to be $371,750 and damages attributable to a perpetual easement over Parcel 2 to be $500. The Currys filed notices of their intention to appeal both awards to the district court, asserting that the appraisers' awards did not reflect the fair market value of the property and therefore were not just compensation as required by law. The NRD appealed only the award for Parcel 1, claiming that it was excessive. The cases were consolidated for appeal to the district court. Before the jury was convened, the parties informed the court that they had agreed to an award of $500 for the perpetual easement on Parcel 2 and asked to remove that issue from consideration by the jury.

Also prior to trial, the district court sustained that portion of a motion in limine filed by the NRD which sought to preclude the Currys from offering any evidence regarding "[m]oving expenses, relocation expenses, interest on funds deposited or withdrawn, [or] real estate tax differentials." The district court also sustained

the Currys' motion in limine which sought to preclude the NRD from offering the testimony of Gary Way, an appraiser consulted by Robert, on the ground that Way's opinions lacked foundation.

Despite the pretrial order granting the NRD's motion in limine with respect to evidence of the Currys' relocation expenses, Robert testified in this regard without timely objection by the NRD. Robert testified that he was asking the jury to award $70,000 of the $89,000 he spent to construct a replacement farm building; $36,000 he spent on relocation of the livestock facilities, corrals, bunks, silage pit, and fences; $172,000 of the $191,000 the family spent on their replacement house; and $1,500 per acre for each of the 160 acres condemned. On cross-examination, Robert conceded that in a separate proceeding, the NRD had agreed to award the Currys a differential between the value of the house on the condemned property and the house they purchased to replace it and admitted that a jury award of the differential would be "doubling up." Pamela likewise acknowledged that she did not expect double payment of the relocation expenses. The NRD moved to strike the Currys' testimony regarding the "replacement house differential costs, the moving the cattle operation, and the [farm building] on the grounds that those are the subject of the separate relocation proceeding" through the NRD with rights of appeal to this court under the Administrative Procedure Act. The district court denied the motion.

In its case in chief, the NRD presented the testimony of Kenneth Beckstrom, a certified real estate appraiser retained by the NRD. Based upon his analysis of sales of comparable farmland in Dixon County, Beckstrom testified that the damage attributable to the taking of Parcel 1 was $224,000, or $1,400 per acre, which included a value of $58,000 attributed to the house which was situated on the property. The NRD offered Way's deposition, and the Currys objected on grounds of relevance, foundation, and hearsay. The district court overruled the offer and excluded Way's deposition testimony.

Tom Moser, the manager of the NRD, testified that the NRD had offered the Currys $105,960 as a replacement housing payment; $20,000 for relocating the farm; $1,560 for moving residential items; and $5,864.85 in real estate tax differential incurred with respect to their new residence. Moser explained that under

Nebraska law, such relocation expenses are determined and paid in a separate administrative proceeding which is subject to judicial review. On cross-examination, the Currys' counsel asked Moser if he would agree to "just dispose of it all here" and Moser replied that he personally had no objection.

The parties further addressed this issue by offering a stipulation requiring that the jury be given a special verdict form with stipulated relocation costs entered on the form. The stipulation provided that there would not be a separate proceeding in which the Currys could receive any additional funds or compensation.

At the instruction conference following submission of the evidence, the NRD objected to the court's proposed jury instructions Nos. 3 and 4 on the issue of fair market value and requested that the Nebraska Jury Instructions be given in their stead. In rejecting the NRD's objection and request, the court indicated that instruction No. 3 was in fact NJI2d Civ. 13.02 "a little bit modified" by *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), and *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996). The court also noted that instruction No. 4 was a direct quote from this court's opinion in *Westgate Rec. Assn., supra.*

The jury returned the following verdict in favor of the Currys:

A) Land and Buildings, excluding house   $216,000[.00]
SW ¼, Section 10

B) House on SW ¼, Section 10      $ 65[,]000[.00]

C) Cost for New House Over B      $ 70[,]000[.00]

D) Severance Damages to Land      $ 86[,]000[.00]
Excluding SW ¼ Section 10

E) Relocation Costs — Residence      $ 1,560.00

F) Relocation Costs — Farming      $ 20,000.00

G) Tax Differential for C      $ 5,864.85

H) Incidental Allowance      $ 378.25

The court entered judgment in favor of the Currys on items A, B, and D, for a total of $367,000. The judgment also provided that pursuant to the stipulation of the parties, the Currys should claim directly from the NRD amounts due under parts C and E through H of the jury verdict.

The Currys filed a motion for taxation of costs and award of attorney fees. The NRD filed a motion for new trial alleging that

there were irregularities in the proceedings, the damages were excessive, the verdict was not sustained by sufficient evidence, and errors of law occurred at trial. A hearing was held on these motion on August 7, 2002. At the hearing, the NRD argued against awarding attorney fees based on the fact that the $367,000 judgment awarded by the district court was not greater than the appraisers' award of $371,750. The NRD further argued that the damages awarded under parts C and E through H were not part of the condemnation action, but, rather, they were amounts properly claimed under an administrative proceeding. See Neb. Rev. Stat. § 76-1214 et seq. (Reissue 1995).

In a January 22, 2003, journal entry, the district court denied the Currys' application for attorney fees as well as the NRD's motion for new trial. The Currys perfected this timely appeal, and the NRD cross-appealed.

## ASSIGNMENTS OF ERROR

The Currys assign, restated, that the district court erred in (1) entering judgment that did not reflect the entire jury award and (2) failing to award reasonable attorney fees.

The NRD assigns on cross-appeal, restated, that the district court erred in (1) modifying the Nebraska Jury Instructions regarding the determination of fair market value in instructions Nos. 3 and 4 and (2) refusing to admit Way's testimony.

## STANDARD OF REVIEW

■ A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong. *State v. Whitlock*, 262 Neb. 615, 634 N.W.2d 480 (2001); *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998); *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996).

■ It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his opinion about an issue in question. *Walkenhorst, supra.* A trial court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

■ Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003); *Jay v. Moog Automotive*, 264 Neb. 875, 652 N.W.2d 872 (2002).

## ANALYSIS

We address the parties' assignments of error in the order that they are alleged to have occurred. We begin with the NRD's claim on cross-appeal that the district court erred in excluding the deposition testimony of Way, a real estate appraiser who was consulted by Robert but not called as a witness at trial. At Robert's request, Way reviewed the appraisal which had been completed by Beckstrom on behalf of the NRD in order to determine if Robert was being "low-balled." Based on his cursory review of the Beckstrom appraisal, Way informed Robert that in his opinion, the appraisal was " 'strong' " and he could not " 'beat it.' " Robert decided not to have Way undertake a separate appraisal. The NRD argues that Way's testimony was relevant to buttress the credibility and opinion of Beckstrom, and cites *Gerken v. Hy-Vee, Inc.*, 11 Neb. App. 778, 660 N.W.2d 893 (2003). *Gerken* was a personal injury case involving a slip and fall in a grocery store. The Nebraska Court of Appeals held that the trial court erred in excluding a store manager's statement that a new maintenance employee had applied too much wax to the floor because the statement was admissible under Neb. Rev. Stat. § 27-801(4)(b)(iv) (Reissue 1995) as a statement offered against a party by its agent or servant within the scope of his agency or employment.

Here, there is no evidence that Way was an agent or employee of the Currys. The record reflects that he was at most an independent contractor who was requested to render a preliminary opinion, on the basis of which the Currys chose not to retain him to conduct a formal appraisal. We acknowledge that there may be circumstances in which an expert who performs an appraisal at the request of a party to a condemnation proceeding can be compelled by the opposing party to testify regarding that appraisal at trial. See 7 Patrick J. Rohan & Melvin A. Reskin, Nichols on Eminent Domain § 7A.03 (rev. 3d ed. 2003). In this

case, however, Way did not actually appraise the Currys' property but merely rendered a preliminary opinion as to whether any appraisal he might perform would meet or exceed the fair market value as determined by the NRD's appraiser. Such an opinion is inherently speculative, and we therefore conclude that the trial court did not abuse its discretion in excluding it.

The NRD also contends in its cross-appeal that the district court erred in giving jury instructions Nos. 3 and 4 over its objection instead of giving the requested NJI2d Civ. 13.02, which provides:

The "fair market value" of a piece of property is the price that someone ready to sell, but not required to do so, would be willing to accept in payment for the property, and that someone ready to buy, but not required to do so, would be willing to pay for the property.

In determining fair market value, you may consider the uses to which the property has been put and the uses to which it might reasonably be put in the immediate future.

[In determining the amount of compensation to be paid, you must not consider any change in the fair market value of the property caused by the public improvement or by the knowledge that the improvement would be (constructed, altered, et cetera).

[You must not compensate the plaintiff for any decrease in the property's fair market value caused by physical deterioration that the plaintiff could reasonably have prevented.]]

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003); *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002).

The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). NJI2d Civ. 13.02 is a correct statement of the law approved by this court in *Walkenhorst*. It was clearly warranted by the evidence. The remaining question is

whether the NRD was prejudiced by the giving of the following instructions instead of NJI2d Civ. 13.02:

### INSTRUCTION NO. 3

A person whose property is taken by condemnation or eminent domain is entitled to recover compensation. This requires that the party whose property is condemned be awarded the fair market value of the property taken.

The "fair market value" of a parcel of property is the price that someone ready to sell, but not required to do so, would be willing to accept in payment for property, and the price that someone ready to buy, but not required to do so, would be willing to pay for the property.

In determining fair market value, you may consider the uses to which the property has been put and the uses to which it might reasonably be put in the immediate future.

In determining fair market value, you may consider all relevant conditions concerning a value including, but not limited to:

1. The presence or absence of active competitors in the market in the area of the property;

2. The trends of prices in the area;

3. Comparable sales of similar properties in arms-length transactions between willing buyers and willing sellers;

4. Replacement cost of the property taken and improvements thereon; and

5. Other relevant factors.

You may consider only legally permissible uses as potential uses for the property.

. . . .

### INSTRUCTION NO. 4

There are three generally accepted approaches used for the purpose of valuing real property in eminent domain cases:

1. The market data approach, or comparable sales method, which establishes value on the basis of recent comparable sales of similar properties;

2. The income or capitalization of income approach, which establishes value on the basis of what the property is producing or is capable of producing in income; and

3. The replacement or reproduction cost method, which establishes value upon what it would cost to acquire the land and erect equivalent structures, reduced by depreciation.

Each of these approaches is but a method of analyzing data to arrive at the fair market value of the real property as a whole.

"If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal." *Walkenhorst v. State*, 253 Neb. 986, 997, 573 N.W.2d 474, 484 (1998). The district court noted that instruction No. 4 was taken directly from language in *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996), and subsequently approved in *Walkenhorst, supra.* While the quotation is indeed accurate as far as it goes, when viewed in isolation, it conveys the impression that any of the three valuation approaches are appropriate under any circumstances. That impression is contrary to the law. In *Westgate Rec. Assn.*, we agreed with the majority rule that the reproduction cost method as an independent test of value "may be used only in rare cases where there is a lack of comparable sales of similar property, where the structures on the property are in some sense unique, or where the character of the improvements is unusually well adapted to the kind of land upon which they exist." 250 Neb. at 22, 547 N.W.2d at 494. We further noted that an appraiser utilizing the reproduction cost method "cannot include as a factor the value of existing improvements, unless the improvements enhance the value of the land." *Id.* at 24, 547 N.W.2d at 495. See, also, 4 Julius L. Sackman, Nichols on Eminent Domain § 13.01[10] at 13-18 (rev. 3d ed. 2003) (noting although replacement cost approach is generally accepted method of fair market valuation, it is least preferred method and "tends to be used when the market data approach or income approach fail to establish fair market value").

In *Walkenhorst, supra*, we held that the district court properly excluded evidence regarding the separate value of a shelterbelt situated on the condemned farmland. Citing our holding in *Westgate Rec. Assn., supra*, that the replacement or reproduction cost method could be utilized only in "rare cases," we reasoned

that the shelterbelt was not "of such a unique nature as to render use of the fair market value standard unjust, to render the determination of the market value impossible, or to require use of one of the other valuation methods described in *Westgate Rec. Assn.*" *Walkenhorst*, 253 Neb. at 992-93, 573 N.W.2d at 481. We held that "[t]he condemnees cannot be compensated for the value of the shelterbelt as a shelterbelt; instead, the only relevant inquiry is how the presence of the shelterbelt on the condemned land affects the fair market value of the land taken." *Id.* at 992, 573 N.W.2d at 481.

The record in this case does not establish any of the factual prerequisites for application of the replacement or reproduction cost method of valuing real property, and there is no expert testimony employing this method of valuation. However, Robert testified on direct examination as to the replacement cost of his house, his farm building, and other improvements including corrals, fences, and a silo. Robert testified that unless the jury awarded him replacement costs, he would be unable to recover them, and further stated that he was asking the jury to award him the fair market value of his land, which he estimated to be $1,500 per acre, *plus* the replacement costs on the house, the farm building, and the other improvements.

We conclude that on this record, instruction No. 4 was not a complete statement of the law and was misleading and prejudicial because it improperly suggested that the jury was free to award the replacement cost of improvements in addition to the fair market value of the farmland on which they were situated. See *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). The prejudicial nature of this instruction was exacerbated by the statements in instruction No. 3 that the jury could consider "[r]eplacement cost of the property taken and improvements thereon" and "[o]ther relevant factors." No other instructions given to the jury serve to ameliorate the misleading and prejudicial effect of instructions Nos. 3 and 4. Thus, the giving of these instructions instead of NJI2d Civ. 13.02 constitutes reversible error which necessitates a new trial.

■ The remaining issues relate to the Currys' assignments of error pertaining to the denial of attorney fees. An appellate court is not obligated to engage in an analysis which is not needed to

adjudicate the controversy before it. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003); *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002). It may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *Jay v. Moog Automotive*, 264 Neb. 875, 652 N.W.2d 872 (2002). Resolution of the Currys' assignments of error are unnecessary to the disposition of this matter, and inasmuch as we are unable to assess the likelihood that these issues will recur at the new trial necessitated by our disposition of the cross-appeal, we do not address them here.

## CONCLUSION

Although we determine that the district court did not abuse its discretion in excluding the testimony of appraiser Way, we conclude that the giving of instructions Nos. 3 and 4 instead of NJI2d Civ. 13.02 constituted reversible error. Accordingly, the judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.