## WILLIAM A. WASHINGTON, APPELLANT, V. QWEST COMMUNICATIONS CORPORATION ET AL., APPELLEES.

704 N.W.2d 542

Filed October 14, 2005.   No. S-04-677.

Dale A. Romatzke and Vikki S. Stamm, of Ganz, Romatzke & Stamm, P.C., L.L.O., for appellant.

Mark J. Peterson and Nora M. Kane, of Koley Jessen, P.C., L.L.O., for appellee Qwest Communications Corporation.

Cathleen H. Allen, of Leininger, Smith, Johnson, Baack, Placzek, Steele & Allen, for appellee Addison Construction Co.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

William A. Washington, while an employee of ConAgra, Inc., was injured when he tripped over a wire lying on the ground between a telephone terminal box and a utility pole located on a utility easement. Qwest Communications Corporation (Qwest) had installed the wire several days earlier in order to provide telephone service to a construction trailer owned by Addison Construction Co. (Addison). The district court granted Addison's motion for directed verdict, and a jury entered a verdict in favor of Qwest. Washington appeals. (ConAgra was joined as a party for the purpose of workers' compensation subrogation. See Neb. Rev. Stat. § 48-118 (Reissue 2004).)

## SCOPE OF REVIEW

▮ Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

## FACTS

Washington was employed as a maintenance worker at ConAgra's packing plant in Grand Island, Nebraska. On October 13, 1998, his duties included collecting trash along a strip of land between ConAgra's north boundary fence and Swift Road, a public street that ran east and west. As Washington chased a plastic bag that was floating in the wind, he tripped on a wire which was lying on the ground between a telephone terminal box and a utility pole on the south side of Swift Road. The wire was allegedly hidden by tall grass. Washington was injured as a result of the fall, and he sought medical treatment. He was terminated from his employment in July 1999.

Prior to Washington's injury, Addison had begun a construction project on the north side of Swift Road (across the street from ConAgra) and had requested that Qwest provide telephone service for a trailer that was to be placed on the site. A telephone

terminal box was located on the utility easement on the south side of Swift Road. A Qwest employee placed a wire which ran from the terminal box to a utility pole about 10 feet away. The wire was laid on the ground between the terminal box and the utility pole and then was strung up the utility pole to hang in the air across Swift Road to the north side of the road. There, the wire was attached to another utility pole, strung down that pole, and laid on the ground.

Washington sued Qwest and Addison. He alleged that Qwest was in actual or constructive possession, control, and use of the premises, where it owned and maintained a telephone terminal box pursuant to a utility easement. He also alleged that Qwest was negligent in leaving a wire lying on top of the ground when Qwest knew or should have known that foot traffic would cross between the utility pole and the terminal box and that the wire would not be seen due to tall grass in the area. Washington alleged that Addison was negligent (1) in failing to properly instruct Qwest as to the installation of the telephone wire, (2) in failing to discover the improper installation of the telephone wire by Qwest, and (3) in failing to bury the telephone wire.

Addison and Qwest alleged that Washington was contributorily negligent and had assumed the risk. Qwest also alleged that Washington was barred from recovery because of the "accepted work doctrine."

At trial, the evidence established that in October 1998, Addison was in the process of building an electrical substation and had requested telephone service from Qwest for a temporary construction trailer to be located on the north side of Swift Road. Qwest's manager of installation maintenance testified that he went to the construction site and explained to one of Addison's employees the various options for installing a telephone wire on a temporary basis. The Addison employee indicated that the company wanted the wire above ground and wanted slack left in the wire because it was not sure of the exact location of the construction trailer on the property. At that time, Qwest had no written policies or procedures regarding "drops on the ground."

The Qwest employee who installed the wire testified that he had been taught to assess situations and make decisions with regard to safety concerns that were observed at installation sites.

He admitted that laying a wire on top of the ground can be dangerous and that no warnings were placed between the terminal box and the utility pole.

At the end of Washington's case, Addison and Qwest each moved for a directed verdict. Addison's motion was granted, and the matter proceeded against Qwest. The jury returned a verdict in favor of Qwest, and Washington timely appealed.

## ASSIGNMENTS OF ERROR

Washington assigns the following errors: The district court erred (1) in failing to sustain his objections to certain jury instructions, (2) in granting Addison's motion for directed verdict, and (3) in failing to give Washington's proposed jury instructions. He also assigns as error that the jury erred in finding for Qwest.

## ANALYSIS

### ACCEPTED WORK DOCTRINE

Washington argues that the accepted work doctrine does not apply to the facts of this case and that the trial court erred in instructing the jury as to the doctrine. In *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 757, 579 N.W.2d 526, 528 (1998), we stated:

> The general rule is that a construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the injury or damage is sustained after the work is completed and accepted by the owner. *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993); *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984); *Stover v. Ed Miller & Sons, Inc.*, 194 Neb. 422, 231 N.W.2d 700 (1975). This principle has been referred to as the "accepted work doctrine." See *Pickens v. Tulsa Metropolitan Ministry*, 951 P.2d 1079 (Okla. 1997).

Exceptions to the accepted work doctrine have been recognized in situations where the parties dealt with inherently dangerous elements or the defect was latent and could not have been discovered by the owner or employer. *Parker, supra*. The phrase "inherently dangerous" has been described in terms of a special

or peculiar risk and has been defined as "'one that "differ[s] from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. . . .""" *Id.* at 757, 579 N.W.2d at 528, quoting *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997).

In the case at bar, Washington objected to a jury instruction concerning the use of the accepted work doctrine as a defense. The instruction stated: "In defense to plaintiff's claim defendant Qwest alleges that it did complete the work requested by defendant Addison and Addison accepted that work and that the wire on which plaintiff tripped and fell was not a latent condition." The trial court explained that the burden of proof in connection with that defense was on Qwest to prove by a greater weight of the evidence that it had completed the work ordered by Addison, that Addison accepted the completed work, and that the completed work did not result in a condition that was latent. Washington asserts that the instruction was in error.

The accepted work doctrine had its roots in *Winterbottom v. Wright*, 152 Eng. Rep. 402 (Ex. 1842), in which a negligent contractor was shielded from liability for a third party's injuries because the contractor and third party were not in privity of contract. See *Suneson v. Holloway Const. Co.*, 337 Ark. 571, 992 S.W.2d 79 (1999). The *Suneson* court cited three reasons supporting the doctrine: (1) the *Winterbottom* decision, (2) the owner alone was in control of the entity where the injury occurred, and (3) the presumption that the owner had carefully inspected the work and knew of its defect before accepting the work. *Suneson, supra*, citing *Howard v. Redden*, 93 Conn. 604, 107 A. 509 (1919).

Whether the jury should have been instructed on the accepted work doctrine depends upon whether Qwest was in control of the premises where Washington was injured at the time of the accident. This court has addressed the question of control of premises in *Wilson v. North Central Gas Co.*, 163 Neb. 664, 80 N.W.2d 685 (1957), and *Muckey v. Dittoe*, 235 Neb. 250, 454 N.W.2d 682 (1990).

In *Wilson*, we stated: "It was indispensable to any recovery in this case that appellant show by evidence that appellee was at the time of the accident *in control of the premises* upon which

appellant was injured." (Emphasis supplied.) 163 Neb. at 667, 80 N.W.2d at 687. There, the plaintiff sustained a leg fracture when she fell over a mound of dirt that remained after the gas company installed an underground pipe and covered it with dirt. The trial court dismissed the case, and we affirmed because there was no proof that the gas company was in the occupancy or control of the premises or that it had any relationship, duty, or right at the time of the accident.

In *Muckey*, we held that a person who was not the owner of or in control of the premises could not be held liable for injuries to a third party that occur on the premises. A delivery person was injured when he delivered a refrigerator to a home that was owned by the purchaser's fiance. We held that the purchaser was not a possessor of the land and did not "in any manner [exhibit] a degree of control or possession of the subject premises which would justify" holding her liable for the delivery person's injuries. *Id.* at 253-54, 454 N.W.2d at 685.

We have not previously considered the control issue as it relates to easements. Thus, we take guidance from other jurisdictions. In *Sutera v. Go Jokir, Inc.*, 86 F.3d 298 (2d Cir. 1996), the plaintiff was injured in a slip-and-fall accident at a shopping mall and the defendant was the owner of an easement in the parking lot where the fall occurred. The court noted that "the imposition of a duty on an owner depends on whether—in light of the rights granted under the easement, as well as the activities undertaken pursuant to those rights—the dominant owner has sufficient control to warrant treatment as a landowner for tort purposes." *Id.* at 305. The court found that the easement owner had sufficient control of the relevant portion of the mall to warrant the imposition of a duty of care toward third parties.

The court stated: "In cases involving liability for injuries arising from conditions on property, the existence of a duty generally depends upon 'occupancy, ownership, control or a special use of [the] premises' by the defendant." *Id.* at 302, quoting *Balsam v Delma Eng'g Corp.*, 139 A.D.2d 292, 532 N.Y.S.2d 105 (1988). The pivotal question in determining whether the owner of an easement owes a duty of care to third persons is "whether the easement holder may fairly be said to occupy, own, or control the relevant property." *Sutera*, 86 F.3d at 302.

In *Kibbons v. Union Elec. Co.*, 823 S.W.2d 485 (Mo. 1992), an electric company had an easement to construct, operate, and maintain utility poles and lines over certain property. The plaintiff's decedent was electrocuted when he came into contact with a utility line. The court stated that the landowner had no duty to maintain or repair or to warn of dangerous conditions on the easement that were in the sole control of the holder of the easement. "This is because the landowner is only liable for those injuries caused by devices placed on the premises by the holder of the easement that are under the landowner's possession and control." *Id.* at 488. The landowner was said to hold "only a servient estate and thus had no duty to warn or barricade against conditions controlled by the owner of the easement or dominant estate." *Id.* at 489.

In *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), a 5-year-old child was injured when she touched a ground-level transformer owned and maintained by a power company but located on land owned by a housing authority. The transformer was the property of the power company and was placed on the premises pursuant to an easement. Noting that the owner of the easement is the party charged with its maintenance, the court held that the power company had the sole duty to keep the transformer safe. "We are of the opinion that the knowledge of third party defendants is irrelevant to the question of their liability where, as here, the third party defendants had no control over the transformer." *Id.* at 611-12, 290 S.E.2d at 598. The court cited *Levy v. Kimball*, 50 Haw. 497, 443 P.2d 142 (1968), for the proposition that it is the control and not the ownership which determines liability.

Washington alleged that Qwest had control of the premises where the accident occurred because it maintained a telephone terminal box there pursuant to a utility easement. Qwest did not dispute that it held an easement on the property. Two Qwest employees testified that the terminal box was on a public right-of-way. The wire was on Qwest's easement, and Qwest had control over the premises for purposes of providing telephone service.

The jury heard testimony concerning the installation of the wire and about Washington's accident. Qwest's manager of installation maintenance testified that he had gone to Addison's

construction site and explained the options available for installing temporary telephone service. The manager told the Addison employee present that because this was a temporary construction site, Addison would be responsible for 100 percent of the cost of the time and material involved in installing the service.

The Qwest installer testified that the decision as to where to place the wire was left to his discretion. He did not recall talking to anyone from Addison before or during the installation. He made the decision to lay the wire on top of the ground based on his observation of the area and his determination that it was safe to do so. He noted that the grass in the area was less than an inch tall, and he said no warning flags were placed in the area because those flags were normally used only to mark locations of buried service. The installer testified that for temporary construction sites, the construction company paid for the wire from the construction site to the terminal box and also paid all costs if the wire was to be buried.

We conclude that the accepted work doctrine did not apply because Qwest was still in control of the premises where the work was performed and the injury had occurred. In this case, the evidence showed that Qwest maintained control of the premises at all times because of the utility easement and that Qwest had control of the placement of the wire. Qwest installed the wire at the request of Addison, but Addison never had any control of the premises where Washington's injury occurred. Addison's construction site was on the north side of Swift Road, and Washington was injured on the south side of the road. The accepted work doctrine was not applicable because when Addison accepted the work, Qwest never relinquished control over the premises where the accident occurred.

■ In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Gary's Implement v. Bridgeport Tractor Parts, ante* p. 286, 702 N.W.2d 355 (2005). Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently

of the conclusion reached by the trial court. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

Qwest maintained control over the site of Washington's accident, which occurred on a utility easement. Therefore, the accepted work doctrine was not applicable to the facts of this case. It was error for the trial court to instruct the jury that the accepted work doctrine could be relied upon as a defense in this case.

Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004). In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). Washington adduced evidence which, if believed by the trier of fact, would establish that Qwest had a duty to protect him from injury, that it did not discharge that duty, and that he was injured as a result. Therefore, Washington is entitled to a new trial as to Qwest's liability.

### DIRECTED VERDICT

Washington claims that the trial court erred when it granted Addison's motion for directed verdict and dismissed Addison from the case. A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 695 N.W.2d 665 (2005). The court found the evidence showed that Addison requested telephone service, that Qwest installed the service and left a wire lying on the ground in a utility easement, and that Washington tripped over the wire and sustained injuries.

The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003). If there is no legal duty, there is no actionable negligence. *Id.* Washington failed to show that Addison owed him a legal duty. Washington and Addison had no contractual relationship. Addison did not control the installation of the telephone wire. Its construction site was

across the street and some 300 to 700 feet away from the terminal box on the utility easement. Addison had no control over the premises on which Washington's injury occurred.

Because Addison had no control over the installation of the wire or the premises where Washington was injured, Addison had no duty to protect Washington from injury. See, *Muckey v. Dittoe*, 235 Neb. 250, 454 N.W.2d 682 (1990); *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982). The trial court did not err in granting Addison's motion for directed verdict, and this assignment of error has no merit.

## CONCLUSION

For the reasons set forth above, the judgment of the district court as to Qwest is reversed and the cause is remanded for a new trial. The directed verdict in favor of Addison is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.

STEPHAN, J., not participating.