NATIONAL AMERICAN INSURANCE COMPANY, APPELLANT, V.
CONSTRUCTORS BONDING COMPANY, DOING BUSINESS AS
CONSTRUCTORS BONDING AND INSURANCE, APPELLEE.
719 N.W.2d 297

Filed August 11, 2006.    No. S-05-251.

William M. Lamson, Jr., and Michele E. Young, of Lamson, Dugan & Murray, L.L.P., and R. Patrick Gilmore for appellant.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

National American Insurance Company (NAICO) sued Constructors Bonding Company, doing business as Constructors Bonding and Insurance (CBI). NAICO alleged that CBI negligently breached its duty to inform NAICO of certain facts which would have affected the issuance of surety bonds that NAICO provided for a third party, C.R. Welshiemer Co. (Welshiemer). The district court sustained CBI's motion for summary judgment and dismissed NAICO's complaint. NAICO appeals.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Wise v. Omaha Public Schools*, 271 Neb. 635, 714 N.W.2d 19 (2006). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## FACTS

On March 15, 2000, NAICO and CBI entered into an agreement that authorized CBI to receive and accept applications for

surety bonds covering classes of risks authorized by NAICO. In October, the vice president of CBI wrote to NAICO, stating that he wanted to build a "book of business" with NAICO and that he was seeking a new bonding company for Welshiemer. The vice president stated that CBI was terminating its relationship with Mid-State Surety, a bonding company that had previously provided surety bonds to Welshiemer.

After NAICO was required to pay certain claims on the surety bonds it had issued for Welshiemer, NAICO filed an action against CBI, alleging that CBI had negligently breached its duty to NAICO by not informing it of facts which would have impacted NAICO's decision to write certain surety bonds for Welshiemer. NAICO claimed that it relied upon CBI's professional skill and expertise in the area of bond applications and that based upon CBI's representations, NAICO issued several surety bonds for Welshiemer. NAICO alleged that CBI had also negligently failed to inform NAICO of claims against Welshiemer involving Mid-State Surety.

NAICO asserted that CBI was under a duty to inform NAICO of any claims activity, including unresolved, outstanding, or pending claims, made by another surety against Welshiemer. NAICO argued that because it relied upon CBI to inform NAICO of any claims, it did not independently investigate whether any other claims had been made against Welshiemer at the time the surety bonds covering Welshiemer were issued. NAICO claimed that CBI knew or should have known of the claims against Welshiemer with Mid-State Surety and that CBI was under a duty to disclose such information.

On September 15, 2000, CBI had received a memorandum from Mid-State Surety which contained criticisms or concerns regarding Welshiemer's financial status. NAICO issued its first surety bond for Welshiemer on December 27. The surety bond was prepared and executed by CBI pursuant to its power of attorney for NAICO. Between January and March 2001, CBI received copies of stop-payment letters written by Mid-State Surety concerning claims on surety bonds written for Welshiemer.

When the operative complaint in this case was filed, the surety bonds issued by NAICO had claims against them for which NAICO had been required to pay $857,908.45. NAICO alleged

that it did not discover Welshiemer's problems with Mid-State Surety until November 2002 and that it would not have issued the surety bonds to Welshiemer had it known of these claims.

In its answer, CBI alleged that any duties between NAICO and CBI were covered by the terms of the March 15, 2000, agreement. CBI denied that it was negligent in any manner in the performance of its duties or in handling the Welshiemer surety bonds. CBI further alleged that if NAICO sustained any damages, it was because of NAICO's negligence in handling the Welshiemer surety bonds. CBI alleged that NAICO failed to properly investigate Welshiemer before issuing the surety bonds, failed to follow recognized underwriting standards, and failed to follow its own underwriting standards in issuing the surety bonds.

In its summary judgment order, the district court determined the following: (1) CBI was an independent contractor or independent insurance agent representing numerous surety bonding companies; (2) CBI's authority to act for NAICO was limited to receiving and accepting applications for surety bonds, providing notice of claims affecting NAICO surety bonds, and collecting premiums; (3) the decision to write surety bonds for a particular contractor for a specific project was solely that of NAICO; (4) NAICO did its own underwriting of potential risks and did not expect CBI to do its underwriting; and (5) NAICO recognized that CBI was acting for the contractor.

The district court found that NAICO's representatives had admitted in deposition and by affidavit that CBI was authorized to bind NAICO to surety bonds " 'following underwriting approval by NAICO.' " The court concluded that the agreement did not extend binding authority to CBI and that NAICO had its own underwriting department and could make the final decision on whether to issue a particular surety bond on an application for a bond submitted by CBI. The court further concluded that the agreement did not expressly impose any duty with respect to disclosure of information regarding Welshiemer and that if those duties were described in the underwriting rules and regulations referred to in the agreement, such rules and regulations were not part of the record and were not provided to CBI during the period in question.

The district court sustained CBI's motion for summary judgment, and NAICO's complaint was dismissed. NAICO timely appeals.

## ASSIGNMENT OF ERROR

NAICO assigns as error the district court's sustaining of CBI's motion for summary judgment.

## ANALYSIS

■ The issue is whether CBI had a duty to disclose to NAICO certain facts which CBI knew or had reason to know related to claims against Welshiemer prior to the time that NAICO issued surety bonds for Welshiemer. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Washington v. Qwest Communications Corp.*, 270 Neb. 520, 704 N.W.2d 542 (2005).

NAICO argues that CBI was dutybound to provide it with information so NAICO could underwrite surety bonds. NAICO claims the evidence establishes that there are material facts in dispute which support its claim that CBI's failure to disclose such information to NAICO caused it to suffer losses on the surety bonds issued to cover Welshiemer.

The record shows that CBI had received at least two stop-payment letters from Mid-State Surety, in which it demanded that no further payments be made on certain Welshiemer surety bonds. CBI did not furnish the stop-payment letters to NAICO, even though NAICO was writing surety bonds for Welshiemer at the time CBI received the letters. The president of CBI testified that such letters from Mid-State Surety regarding the stop-payment letters were important information that a surety company would want to know.

A former vice president at NAICO testified that NAICO relied on its agents, such as CBI, to inform NAICO as to a surety bond applicant's character. He stated that companies like CBI also developed information that a surety would need in order to make a proper analysis of a contractor. The former vice president admitted that the contract between NAICO and CBI established the relationship between NAICO and CBI as it related to surety bonds. He stated that pursuant to such agreement, NAICO

reserved the right to decide whether it would accept an application for a surety bond and whether to write a surety bond on a particular project. To his knowledge, NAICO had not sent any underwriting rules or regulations to CBI.

David Alsip, the current vice president of surety bonds for NAICO, testified that after an application for insurance on a surety bond was submitted, the decision whether to issue the particular surety bond rested with NAICO. An agent's authority was limited to soliciting business, collecting premiums, and activities of that nature. The decision to insure a particular risk was made by NAICO. Alsip admitted that CBI was an independent contractor, as opposed to an employee of NAICO. Under the agreement, CBI had authority to receive and accept applications for surety bonds. CBI would then forward those applications to NAICO for its review and analysis. After NAICO conducted its review and analysis pursuant to its guidelines, NAICO made the decision as to whether to write a surety bond on a contractor for a particular project. According to Alsip, the decision whether to write or to decline a particular surety bond was made by NAICO personnel only and NAICO did its own underwriting work. Between December 27, 2000, and August 8, 2001, NAICO wrote 10 surety bonds for Welshiemer.

Alsip further stated that in evaluating whether to issue surety bonds for a contractor, NAICO reviewed the contractor's financial statements, tax returns, work programs, working capital, equity, and other factors. Upon acceptance, NAICO required the contractor to submit an application for each job for which the contractor wanted to be bonded. NAICO conducted two reviews: one to accept the contractor and one to accept the specific project involved. NAICO's policies required its own underwriters to conduct a thorough review of a contractor's prior experience with other companies, but Alsip did not believe this was done in Welshiemer's case. NAICO's underwriting guidelines provided that the final assessment of the financial condition of the contractor applying for a surety bond was a function to be performed by NAICO. NAICO's internal guidelines also provided that it must have three fiscal yearend statements from the contractor applying for the surety bond. Alsip could not recall if such statements were obtained before NAICO began writing surety bonds for Welshiemer.

Alsip testified that as an underwriter for NAICO, he had rejected eight of Welshiemer's applications for surety bonds. NAICO rejected the first application on November 14, 2000. Another application by Welshiemer was rejected because Alsip felt the proposed job was too large for the company. He stated that NAICO was trying to get Welshiemer to restructure some of its debt. Between October 8 and 23, 2001, Alsip rejected seven applications by Welshiemer for surety bonds.

NAICO obtained Dun & Bradstreet reports on Welshiemer, beginning on October 13, 2000, with periodic updates. It also obtained indemnity agreements from Welshiemer, as well as from the company owner and his wife personally. Alsip stated these indemnity agreements provided the backbone of the relationship between NAICO and Welshiemer. NAICO did its own internal financial analysis of Welshiemer as a part of its underwriting process. According to Alsip, NAICO had never asked CBI about the claim history of Welshiemer and had never contacted any of Welshiemer's prior sureties.

In summary, the question is whether CBI had a duty to disclose to NAICO information regarding stop-payment letters that it had received from Mid-State Surety which showed that Mid-State Surety had halted payments on certain Welshiemer surety bonds. In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Washington v. Qwest Communications Corp.*, 270 Neb. 520, 704 N.W.2d 542 (2005). In the case at bar, the district court found that a duty to disclose the information concerning Welshiemer could arise only if there was a fiduciary, special, or confidential relationship between NAICO and CBI.

NAICO argues that there is at least a material issue of fact regarding whether CBI was an agent of NAICO. It is upon this claim of agency that NAICO asserts CBI had a fiduciary relationship and, hence, a duty to inform it of "any claims activity, including unresolved, outstanding or pending claims, to another surety regarding Welshiemer."

In *Moore v. Hartford Fire Ins. Co.*, 240 Neb. 195, 481 N.W.2d 196 (1992), we noted that whether an insurance intermediary is an

agent of the insured or the insurer is generally a question of fact. We therefore examine the record to determine if there is a material issue of fact regarding whether CBI was the agent of NAICO.

NAICO authorized CBI to solicit and accept proposals for business. Pursuant to section II of the agreement between the parties, CBI's authority was limited to receiving and accepting applications for surety bonds covering classes of risks that NAICO would from time to time authorize. CBI was required to comply with NAICO's underwriting rules and regulations, but the record does not disclose that NAICO's rules and regulations were ever provided to CBI.

The undisputed facts establish that CBI was an independent contractor. Alsip, NAICO's vice president of surety bonds, testified that CBI was an independent contractor. Evidence showed that CBI had contractual relationships with more than 10 surety companies. CBI's authority to act for NAICO was limited to receiving and accepting applications for. surety bonds, providing notice of claims affecting NAICO bonds, and collecting premiums. The record does not establish that CBI was an agent of NAICO, which would create a fiduciary relationship between them.

Having concluded that CBI was an independent contractor, we must determine whether CBI had any duty to disclose to NAICO the information about Welshiemer. In *Jones v. Stewart*, 62 Neb. 207, 210, 87 N.W. 12, 13 (1901), this court stated: "[W]here persons are dealing with each other upon equal terms, and no confidential relation exists between them, neither is bound to disclose superior information he may have respecting the transaction, and, in the absence of fraud or deception to induce the contract, the courts can afford no relief." As a general rule, a party to a transaction does not have a duty to disclose facts to the other unless there is a fiduciary relationship between the parties. *Midland Nat. Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404 (Minn. 1980). The record does not establish that a fiduciary relationship existed between NAICO and CBI, and there is no allegation that CBI's conduct was fraudulent or that the information it furnished to NAICO was false.

The relationship between NAICO and CBI was defined by the "Surety Producer Agreement." This document, which was

prepared by NAICO, described the obligations between the parties. Absent a fiduciary relationship, the duty to disclose to NAICO any information concerning Welshiemer would have to arise under the terms of the agreement. We conclude that no duty to provide such information was set forth in the agreement.

The facts are undisputed that it was NAICO's decision whether to issue the surety bonds for a particular contractor based upon its own underwriting of potential risks and that NAICO did not expect or require CBI to complete any underwriting on its own. NAICO's representatives testified that CBI was authorized to bind NAICO to surety bonds following underwriting approval by NAICO. Although the agreement provided that CBI would comply with NAICO's underwriting rules and regulations, it was undisputed that NAICO did not provide any rules or regulations to CBI.

Alsip testified that NAICO's guidelines provided for underwriters to make a thorough review of a principal's prior experience with other companies, but he did not believe that this was done in Welshiemer's case. He stated that NAICO's guidelines provided that it would assess a contractor's financial condition and that NAICO would obtain three fiscal yearend statements before issuing surety bonds for a contractor. The guidelines also provided for reference checks with a contractor's major subcontractors, suppliers, architects, and engineers and that prior sureties would be contacted if there was any conflict in other information obtained.

NAICO conducted its own debt-to-equity analysis of Welshiemer after it was advised that the ratio was too high. NAICO reduced Welshiemer's aggregate bonding limit after the first claim against Welshiemer was submitted. It received Dun & Bradstreet financial reports on Welshiemer and obtained an indemnity agreement from Welshiemer, as well as from the company's owner and his wife. NAICO never inquired of CBI regarding Welshiemer's claim history.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Wise v. Omaha Public*

*Schools*, 271 Neb. 635, 714 N.W.2d 19 (2006). We conclude that CBI had no duty to disclose to NAICO information regarding Welshiemer's relationship with Mid-State Surety. There is no genuine issue of material fact which would establish that CBI had a duty to disclose such information to NAICO. The district court did not err in granting CBI's motion for summary judgment and dismissing NAICO's complaint.

## CONCLUSION

NAICO has not established that CBI had a duty to disclose to NAICO any claims activity involving Welshiemer and another surety. The district court correctly sustained CBI's motion for summary judgment and dismissed NAICO's complaint.

AFFIRMED.

CONNOLLY and MCCORMACK, JJ., not participating.